J-S51031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.J.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: V.P., MOTHER | No. 1143 EDA 2015 |

Appeal from the Order Entered March 20, 2015
in the Court of Common Pleas of Monroe County
Orphans' Court at No.: 1 OCA 2015

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 11, 2015**

V.P. (Mother) appeals the order entered March 20, 2015, that terminated her parental rights to her son, J.J.L. (Child), born in March of 2011, and changed Child's goal to adoption.[1]  We affirm.[2]

Monroe County Children and Youth Services (MCCYS) has been involved with this family since April 25, 2012, when Child's father, J.L. (Father), was arrested for possession of child pornography.  (**See** N.T. Hearing, 2/17/15, at 5).  Child was living with his parents at the time of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother filed a second appeal at 1144 EDA 2105 that this Court, *sua sponte*, dismissed as duplicative on July 8, 2015.

[2] The trial court also terminated the parental rights of Child's father, J.L.; he is not a party to the instant appeal.

Father's arrest. Mother denied any knowledge of Father's offense and signed a safety contract that provided that Father would only have supervised contact with Child. (*See id.*). A condition of Father's bail was that he was to have no contact with minors. (*See id.* at 7).

Mother and Child resided with a friend who agreed to supervise Mother's contact with Child. At the time, Mother tested positive on urine drug screens for oxycodone, for which she had a prescription, and THC. (*See id.* at 5, 7).[3] Mother lost custody of her three older children due to drug use. (*See id.* at 6).

Father pled guilty to felony possession of child pornography on December 3, 2012, and, on February 21, 2013, the court sentenced him to time served and two years of probation. He was required to register under Megan's Law, and to have contact with Child only as supervised by MCCYS. (*See id.* at 10, 13). Father moved to Langhorne, Pennsylvania, to reside with his mother.

On August 5, 2013, Mother tested positive for morphine, oxycodone and THC. (*See id.* at 18-19). Mother continued to test positive for THC and opiates, including suboxone, for which she did not have a prescription. (*See*

_____

[3] "THC stands for tetrahydrocannabinol and is the active ingredient of marijuana." *Commonwealth v. Jones*, 2015 WL 4503123, at *1 n.3 (Pa. Super. 2015).

*id.* at 14-17). Mother did not comply with her Family Service Plan requirement to submit three urine screens per week. (*See id.* at 16).

In September of 2013, MCCYS filed a dependency petition when the friend Mother resided with no longer wished to supervise Mother's contact with Child. (*See id.* at 18). The trial court found Child to be dependent at a hearing on September 30, 2013. MCCYS placed Child in foster care. (*See id.* at 20).

At a visit to the offices of MCCYS on October 25, 2013, Mother reported that she had been arrested at her job at Rite Aid for possession with intent to deliver. (*See id.* at 20-21). In November of 2013, Mother moved to Langhorne, Pennsylvania to live with Father. (*See id.* at 21). In December of 2013, Catholic Social Services discharged Mother from drug and alcohol counseling for noncompliance. (*See id.* at 22). Mother tested positive for THC on December 13, 2013, and then refused drug screening, although she claimed that she was involved with Newtown Counseling. (*See id.* at 23, 36-37).

Mother found employment in April of 2014, and completed online parenting classes. She tested positive for oxycodone and THC, however, and missed visits with Child from June through September of 2014. (*See id.* at 38-39). By September of 2014, Mother had moved to Kingston, Pennsylvania, and was again unemployed. (*See id.* at 40). By the end of that September, however, she was back living with Father in his mother's home. (*See id.* at 41). In late October of 2014, Mother moved to

Weatherly, Pennsylvania, but was back living with Father that December when he was arrested for failure to register under Megan's Law. (*See id.* at 43-45).

On October 8, 2014, Mother tested positive for oxycodone, for which she had a prescription, THC, and alprazolam. (*See id.* at 42). On December 30, 2014, Mother was sentenced to three to twenty-three months' on the charge of possession with intent to deliver. (*See id.* at 45). Both Mother and Father were incarcerated at the time of the termination of parental rights hearings. (*See id.* at 47; *see also* N.T. Hearing, 3/19/15, at 6, 11-12).

Mother testified that she was eligible for parole on March 27, 2015 and planned to live with Father's mother again. (*See* N.T. Hearing, 2/17/15, at 63-64). Father's mother lives in a senior retirement community that does not permit children. (*See id.* at 80; *see also* N.T. Hearing, 3/19/15, at 9). Mother intends to marry Father. (*See* N.T. Hearing, 2/17/15, at 84).

Mother testified at the February 17, 2015 hearing that, prior to Child's dependency, Father watched Child while she worked and she saw no signs of abuse. (*See id.* at 65). Mother claimed that her medication caused false positive screens for THC. (*See id.* at 67). Although Mother testified that she had a prescription for oxycodone, she denied knowledge of many of the ten physicians who had prescribed the drug for her at various pharmacies. (*See id.* at 76). The *Guardian Ad Litem* presented prescription logs from

Rite Aid Pharmacy, CVS Pharmacy and Blakeslee Pharmacy. (*See Guardian Ad Litem's* Exhibit 1).

Child was three years of age at the time of the hearings in this matter and has resided in his current foster home since September 29, 2014. (*See* N.T., 2/17/15, at 57). According to his caseworker, he is doing well in the home and has bonded with the family, who wish to adopt him. (*See id.* at 48, 57).

By decree entered March 20, 2015, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A §§ 2511(a)(1), (2), (5), (8) and (b). Mother timely filed her notice of appeal and statement of errors complained of on appeal on April 13, 2015. *See* Pa.R.A.P. 1925. Mother filed an amended notice of appeal on April 14, 2015.[4]

Mother raises the following questions on appeal:

Did [MCCYS] fail to present clear and convincing evidence that termination of [M]other's parental rights served the needs and interests of [Child]?

Did trial court [sic] err in terminating [Mother's] parental rights without clear and convincing evidence that termination of [M]other's parental rights served the needs and interests of [Child]?

(Mother's Brief, at 6).

Our standard of review is as follows:

---

[4] The amended notice of appeal includes a request for transcript that Mother omitted from her original filing.

. . . In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

We note our standard of review of a change of goal:

When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. . . .

*In the Interest of S.G.*, 922 A.2d 943, 946 (Pa. Super. 2007).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). As we explain below, Mother has waived her claim under subsection (a), but we would find sufficient evidence to support termination under section 2511(a)(1), as follows.

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination "must [] demonstrate[] through clear and convincing evidence: that for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a[] settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties." *In Re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citing 23 Pa.C.S.A. § 2511(a)(1)).

With respect to subsection 2511(a)(1), our Supreme Court has held:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988) (citation omitted). Further,

. . . [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

In regard to incarcerated persons, our Supreme Court has stated:

. . . [I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that [sic] the causes of the incapacity cannot or will not be remedied.

\* \* \*

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control or subsistence and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S.[A.] § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d [883,] 891

[Pa. 1986] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); *[In re:] E.A.P.*, 944 A.2d [79,] 85 [(Pa. Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d 817, 828, 830-31 (Pa. 2012).

(some quotation marks omitted).[5]

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding

---

[5] Our Supreme Court cited its decision in *In re: Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975), for the proposition that termination may be appropriate for an incarcerated parent who has failed to perform his parental duties for a six-month period of time. *See In re S.P.*, *supra*, at 828. Thus, although *In re S.P.* was written in the context of subsection (a)(2), the holding applies as well to subsection (a)(1).

evaluation performed by an expert. *See In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

Mother claims that MCCYS did not present clear and convincing evidence that the termination of her parental rights would serve the needs and interests of Child.

We begin our analysis by noting that Mother has waived her claims of error by failing to develop coherent legal arguments in that Mother's argument contains no citation to any legal authority. Mother makes no effort whatsoever to link the facts of her case to the law. In sum, Mother makes no attempt to develop a coherent legal argument to support her conclusion that the trial court erred in terminating her parental rights and she has, therefore, waived that argument. "The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation omitted). "[A]rguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted). *See also Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) ("It is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal.") (*quoting Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005)).

Moreover, upon our independent review, we conclude that the record supports the termination of Mother's parental rights under subsection (a)(1) and (b). Mother's two claims of error are similar; therefore, we will consider them as one complaint that MCCYS presented insufficient evidence to sustain its burden pursuant to either subsection.

The record contains clear and convincing evidence that Mother has evidenced a settled purpose of relinquishing her parental claim to Child, or has refused or failed to perform her parental duties. Testimony at the hearings paints a consistent picture of a mother unable to provide for herself let alone the needs of Child. MCCYS provided services to the family for more than one year before seeking dependency. Child has remained in foster care since the trial court made its finding of dependency in September of 2013.

During Child's dependency, Mother has consistently tested positive for THC and opiates such as morphine, suboxone, and oxycodone. Mother claims that she has prescriptions for oxycodone, but evidence demonstrates that ten different doctors and three different pharmacies supply oxycodone to Mother. Mother has failed to demonstrate consistent compliance with drug and alcohol counseling. MCCYS asked Mother to submit to three weekly drug screens. Mother provided only one screen and that was positive.

Mother's housing has been unstable throughout Child's dependency. She has lived with Father in his mother's home in a senior living community, with one friend in Kingston, Pennsylvania, and with another friend in

Weatherly, Pennsylvania. At the time of the hearing in this matter, Mother was incarcerated after pleading guilty to possession with intent to deliver.[6] Despite Father's guilty plea to the possession of child pornography, and his probation violation for failing to register under Megan's Law, Mother testified that she still intends to marry Father.

Mother has not demonstrated an ability, understanding or willingness to meet the needs of Child, who had lived in foster care for some eighteen months at the time of the hearing. Mother has evidenced a settled purpose of relinquishing her parental claim to Child, or has refused or failed to perform her parental duties.

Testimony established that Child is happy in his current foster home and has bonded with the family that wishes to adopt him. Even though Child may have a bond with Mother, we find the trial court's analysis persuasive and quote it here, with approval:

> We further find that [Child's] needs and interests would best be served by [the] termination of parental rights. [Child] has bonded with his foster parents, who wish to adopt him. [Child] is almost four (4) years old and is at an important part of his life developmentally. Although he recognizes Mother to be his mother, he has spent the last eighteen (18) months with his foster family; and likely much longer even if the parents are released from incarceration. This [foster] family wants to adopt [Child]. [Child] has a bond with Mother, which is to be expected since she raised him for the first two and a half (2 1/2) years of his life. However, the permanency that the foster family in the

---

[6] We find no evidence that Mother's incarceration, in and of itself, contributed to Mother's inability or unwillingness to parent Child.

pre-adoption placement can provide is one with more security and certainty of providing for [Child's] needs. Mother and Father have very uncertain futures. . . .

(Trial Court Opinion, 3/20/15, at 10).[7]

Our review of the record reveals that the trial court's decision to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1) and (b), and change Child's goal to adoption is supported by clear and convincing evidence, and that there was no abuse of the trial court's discretion. **See In re L.M.**, **supra** at 511.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2015

---

[7] "This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life and the resulting bond with the natural parent is attenuated." **In re H.H.B.**, 107 A.3d 175, 180 (Pa. Super. 2014) (citation omitted).