J-S56040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES LEE HARDY, | |
| Appellant | No. 243 MDA 2015 |

Appeal from the Judgment of Sentence December 5, 2014
in the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0003415-2014

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED OCTOBER 22, 2015**

Appellant, James Lee Hardy, appeals from the judgment of sentence imposed on December 5, 2014 pursuant to his jury conviction of possession of firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).  Appellant challenges the trial court's denial of his motion to suppress evidence.  We affirm.

The trial court aptly set forth the background facts of this case in its May 19, 2014[1] opinion, as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The certified record did not contain the court's opinion, which accompanied its order denying Appellant's motion to suppress.  We remind Appellant that it is his responsibility to provide this Court with a complete certified record that includes everything pertinent to our review, and that failure to do so generally results in waiver.  **See Commonwealth v. Little**, 879 A.2d 293, 301 (Pa. Super. 2005), _appeal denied_, 890 A2d 1057 (Pa. 2005) ("An
_(Footnote Continued Next Page)_

On October 6, 2013, at approximately 7:30 p.m., Officer [Thomas] Cole of the Lancaster City Police Department responded to a domestic dispute in the 600 block of South Lime Street in the City and County of Lancaster. (*See* N.T. Suppression Hearing, 3/14/14, at 15). While *en route*, Officer Cole was informed that Caprice Speller had been assaulted by her boyfriend, [Appellant], with a silver revolver, that a shot had been fired, and that [Appellant] was leaving the scene in a white SUV, likely headed for his residence at 1551 Passey Lane in Manheim Township. (*See id.* at 16).

Upon arrival, Officer Cole met with Ms. Speller and observed multiple visible injuries to Ms. Speller and noted that the rear door was kicked in, pieces of the door were splintered and laying on the floor, a kitchen table was moved, curtains were knocked down, and other furniture was upturned. (*See id.* at 17). Officer Cole then notified the Manheim Township Police Department that [Appellant] was likely traveling to 1551 Passey Lane and that he should be detained until the situation was under control. (*See id.* at 17-18). Manheim Township Police were also notified that the first three characters of [Appellant's] registration were "J G S." (*Id.* at 18).

Officer Daniel Swigart of the Manheim Township Police Department responded to 1551 Passey Lane, as instructed by dispatch. (*See id.* at 5). He had also been informed by dispatch of the nature of the incident in the 600 block of South Lime Street, that [Appellant] had broken into a residence and was involved in a domestic dispute with a firearm, and that [he] would be driving a white SUV with "J G S" as the first three characters of the registration. (*Id.* at 6; *see id.* at 5). Officer Swigart also found a photograph of [Appellant] on JNET. (*See id.* at 6).

Officer Swigart identified [Appellant's] vehicle as it entered the parking lot of the apartment complex and followed it until it parked. (*See id.* at 7). Officer Swigart identified [Appellant]

*(Footnote Continued)* ─────────

appellant's failure to provide the reviewing court with a complete certified record results in the waiver of the claim.") (citations omitted). However, in the interest of judicial economy, we obtained a certified copy of the opinion from the trial court.

based on his JNET photo as he exited the SUV. (*See id.* at 8). At this point, Officer Swigart exited his patrol vehicle, ordered [Appellant] to the ground at gunpoint, searched [him], handcuffed [him], and placed [him] in the rear of a police vehicle to await the Lancaster City Police. (*See id.* at 9). Lancaster City Police informed Officer Swigart that the firearm used by [Appellant] was likely in a black bag in [Appellant's] vehicle; Officer Swigart observed the black bag in the vehicle and stayed with the vehicle until Officer Cole took possession of it. (*See id.* at 10-11). Officer Hamby of the Lancaster City Police arrived, took custody of [Appellant], and transported him from the scene. (*See id.*).

After speaking to Ms. Speller and securing the scene of South Lime Street, Officer Cole responded to 1551 Passey Lane. (*See id.* at 18-19). He had learned from Ms. Speller that Ellen Davidson was the owner of the white SUV driven by [Appellant]. (*See id.* at 18). Officer Cole verified that Ellen Davidson was the registered owner via a records check. (*See id.* at 18-19). Lancaster City Police contacted Ellen Davidson and accompanied her to 1551 Passey Lane, where she gave Lancaster City Police permission to search the vehicle and signed a Lancaster City Bureau of Police Consent form. (*See id.* at 19). While Ms. Davidson was the clear registered owner of the vehicle, she informed police that [Appellant] was the primary operator of the vehicle, that she intended to transfer ownership to his name, and that [Appellant] was the only person in possession of a set of keys for the vehicle. (*See id.* at 21-22).

Upon receiving consent, officers searched the vehicle and found a black bag that matched the description of the bag that was alleged to contain the firearm. (*See id.* at 21). A .38 revolver was found inside the bag, which was then secured by police and taken to the Lancaster City Police Station where Officer Cole inventoried the contents of the bag. (*See id.* at 21-23). Inside the bag, Officer Cole found two discharged rounds, three live rounds in the chamber of the revolver, a small quantity of marijuana, approximately twelve grams of cocaine, several digital scales, and a box of sandwich baggies. (*See id.* at 23).

(Trial Court Opinion, 5/19/14, at 1-3) (some record citation formatting provided).

The Lancaster City police filed charges against Appellant, and, on December 30, 2013, the Commonwealth filed an information at docket number 5892-2013, charging him with possession of drug paraphernalia, possession with intent to deliver, possession of a small amount of marijuana, possession of a firearm prohibited, and firearms not to be carried without a license.[2]  On February 14, 2014, Appellant filed a motion to suppress, and the court held a hearing on March 14, 2014.  The parties then submitted briefs on the suppression issue, and the trial court denied the motion on May 19, 2014.[3]

On July 23, 2014, the Manheim Township Police Department filed the same charges against Appellant for the incident as those previously filed by the Lancaster City police at docket number 5892-2013.  Thereafter, the Commonwealth filed an information at docket number 3415-2014, consolidated docket numbers 5892-2013 and 3415-2014, and *nolle prossed* all charges at case number 5892-2013.

---

[2] 35 P.S. § 780-113(a)(32), (a)(30), and (a)(31), and 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

[3] The date stamp on the opinion and order denying the suppression motion is May 19, 2014.  (**See** Opinion, 5/19/14).  However, the docket lists the opinion as filed on May 21, 2014.  (**See** Docket, Case Number 5892-2013, at 8).  For sake of clarity, because the trial court uses the earlier date when referring to its decision, (**see** Trial Court Opinion, 3/09/15, at 1), we will use May 19th also.

At trial, the Commonwealth proceeded on only count one of the information at 3415-2014, possession of firearm prohibited. On September 15, 2014, the jury convicted Appellant of committing the offense. On December 5, 2014, the court sentenced him to not less than four nor more than eight years' incarceration.[4] The court denied his timely post-sentence motion on January 5, 2015.

Appellant timely appealed on February 4, 2015. The court ordered him to file a Rule 1925(b) statement, which he timely did on February 23, 2015. *See* Pa.R.A.P. 1925(b). The court filed an opinion on March 9, 2015 in which it relied on its May 19, 2014 opinion. *See* Pa.R.A.P. 1925(a).

Appellant raises two questions for our review:

> I.    Did not the court err in denying [Appellant's] motion to suppress when the police did not have probable cause to conduct the search and when any purported consensual search was invalid?
>
> II.   Did not the court err in denying [Appellant's] motion to suppress when an officer of the Lancaster City Police Department performed the warrantless search beyond the territorial limits of his primary jurisdiction in contravention of 42 Pa.C.S.[A.] §[]8953?

(Appellant's Brief, at 4) (most capitalization omitted).

Our standard of review of a trial court's denial of a motion to suppress is well-settled:

_____

[4] At the sentencing hearing, the Commonwealth also formally *nolle prossed* counts two through five of the information filed at docket number 3415-2014.

- 5 -

[An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 2015 WL 4503123, at *1 (Pa. Super. filed July 24, 2015) (citation omitted).

In his first issue, Appellant argues that the trial court abused its discretion in denying his motion to suppress the gun seized from the search of his car. (*See* Appellant's Brief, at 18-24). Specifically, he makes two arguments in support of this issue: that "[t]he police did not have probable cause to search [his] vehicle," and no exception to the warrant requirement applied; and that Ellen Davidson's consent to search was invalid and involuntary. (*Id.* at 18, 22). We disagree.

Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution acknowledge an individual's right to be free from unreasonable searches and seizures, which

generally requires that police officers obtain a search warrant based on probable cause. **See** U.S. Const. Amend. IV; Pa. Const. Art. 1, § 8.

However, as acknowledged by Appellant, the Pennsylvania Supreme Court recently held in **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), that "[t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." (Appellant's Brief, at 19) (quoting **Gary**, **supra** at 138).

It is well-settled that "[p]robable cause [ ] is a practical, non-technical concept which requires consideration of the totality of the circumstances." **Commonwealth v. Perel**, 107 A.3d 185, 203 n.4 (Pa. Super. 2014) (citation omitted). "Whether probable cause exists . . . must be . . . viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training." **Commonwealth v. Wells**, 916 A.2d 1192, 1195 (Pa. Super. 2007) (citation omitted).

Here, the trial court found that, in the totality of the circumstances, police had probable cause to search Appellant's vehicle, and that the warrantless search of the vehicle therefore was authorized by the automobile exception recognized in **Gary**. (**See** Trial Ct. Op., at 6-7). Specifically, the court stated:

> In the instant case, police were responding to a violent domestic call involving the use of a firearm. (N.T. Suppression Hearing, 3/14/14, at 15-16). Officer Cole arrived and corroborated the victim's story by observing fresh injuries to the

- 7 -

victim and signs of a struggle in the residence. (*See id.* at 17). The victim provided a description of the vehicle that [Appellant] was driving, his likely location, and a description of the bag from which she saw [him] remove the firearm and to which [he] returned the firearm. (*See id.* at 16-17, 21). [Officer Swigart] confirmed that the firearm was not on [Appellant's] person and viewed a bag matching the description of the one containing the firearm. (*See id.* at 9-10). Approximately six minutes had passed between the time Officer Cole was dispatched to the scene of the domestic incident and when [Officer Swigart] stopped [Appellant], which led officers to believe [Appellant] had just left the scene of the domestic incident and still had the firearm in his possession. (*See id.* at 5, 15).

Based on the information Officer Cole received from dispatch, observed from the scene of the incident, and the short period of time between when Officer Cole was dispatched and when [Appellant] was stopped, there was probable cause to believe there was evidence of a crime, namely the firearm, within the vehicle. Therefore, the police properly executed a warrantless search of the vehicle to recover the firearm used in the incident pursuant to the automobile exception to the warrant requirement.

(Trial Ct. Op., at 6-7)[5] (some record citation formatting provided).

Our independent review of the record supports the trial court's factual

findings, and we conclude that it properly applied the law to those facts

---

[5] We note that, even prior to *Gary*, it was well-settled that an officer's reasonable belief that the defendant had a weapon in the vehicle created an exigent circumstance justifying a warrantless search. *See, e.g.*, *Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994), *cert. denied*, 513 U.S. 1031 (1994) ("[R]easonable belief based on . . . specific articulable facts . . . entitles an officer to conduct a search of those portions of the passenger compartment of a suspect's vehicle in which a weapon could be placed."); *Commonwealth v. Boyd*, 17 A.3d 1274, 1278 (Pa. Super. 2011), *appeal denied*, 29 A.3d 370 (Pa. 2011) (concluding that warrantless vehicle search for weapons proper where based on officer's reasonable belief and articulable suspicion that the occupants of the vehicle may have access to a weapon).

when it found that the police had probable cause to search Appellant's vehicle without a warrant pursuant to the automobile exception. **See Jones**, **supra** at *1; **Gary**, **supra** at 138. Appellant's argument to the contrary lacks merit.

Moreover, even if the automobile exception did not apply to this matter, Appellant's argument that Ellen Davidson was unable to give valid, voluntary consent lacks merit. (**See** Appellant's Brief, at 22).

It is well-settled that:

A search warrant is not required . . . where a person with the proper authority[26] unequivocally and specifically consents to the search.

> [26] A person has authority to consent to a search if the person has a possessory or privacy interest in the area to be searched . . . .

To establish a valid consensual search, the prosecution must first prove that the consent was given during a legal police interaction . . . and second, that the consent was given voluntarily.

**Commonwealth v. Reid**, 811 A.2d 530, 544 (Pa. 2002), *cert. denied*, 540 U.S. 850 (2003) (citations omitted). Third party consent is valid if police reasonably believe the individual has authority to consent. **See Illinois v. Rodriguez**, 497 U.S. 177, 188-89 (1990).

Here, despite Appellant's argument to the contrary, the record supports the court's finding that Ellen Davidson, the registered owner of the searched vehicle, gave voluntary, valid consent. (**See** Trial Ct. Op., at 7). First, we observe that Appellant provides no supporting authority for his

argument that, because Ms. Davidson bought the car for his use and intended to give it to him, she had no authority to consent to the search. (*See* Appellant's Brief, at 23-24).

Additionally, we find no merit to Appellant's argument that Ms. Davidson's consent was involuntary because, "[o]nce at the scene, [she] was effectively at the mercy of the police to return her home." (*Id.* at 24). The suppression hearing transcript reflects that Officer Cole independently confirmed via a records check that Ms. Davidson was the legal registered owner of the subject vehicle. (*See* N.T. Suppression Hearing, 3/14/14, at 18-19). An officer brought her to the vehicle at 1551 Passey Lane. (*See id.* at 19). Before talking to Officer Cole, she signed the Lancaster Bureau of Police Consent Search Form. (*See id.* at 19-20). Officer Cole orally reviewed the form with Ms. Davidson, ensuring she understood her rights. (*See id.* at 20). Ms. Davidson confirmed at the scene that she had purchased the vehicle, and that it was registered to her. (*See id.* at 21). Ms. Davidson did not testify at the hearing. Therefore, there is nothing in the record to support Appellant's allegation that she felt she was "at the mercy of the police to return her home." (Appellant's Brief, at 24).

Hence, we conclude that the Commonwealth established that Ms. Davidson's consent was given "during a legal police interaction," *Reid*, *supra* at 544, and that the police reasonably could believe that she had a possessory interest in the vehicle as its registered owner. *See Rodriguez*,

*supra* at 188-89; ***Reid***, ***supra*** at 544. Also, the record supports the court's legal conclusion that Ms. Davidson's consent to search was voluntary. ***See*** ***Reid***, ***supra*** at 544. Accordingly, Appellant's argument regarding the trooper's lack of consent to search does not merit relief. Therefore, Appellant's first issue lacks merit.

In his second claim, Appellant maintains that the court erred in denying his suppression motion where Officer Cole performed the vehicle search outside of his primary jurisdiction, in violation of the Municipal Police Jurisdiction Act (MPJA), 42 Pa.C.S.A. §§ 8951-8954. (***See*** Appellant's Brief, at 25-29). We disagree.

Section 8953 of the MPJA provides, in pertinent part:

**(a) General rule.**—Any duly employed municipal police officer who is within this Commonwealth, but beyond the territorial limits of his primary jurisdiction, shall have the power and authority to enforce the laws of this Commonwealth or otherwise perform the functions of that office as if enforcing those laws or performing those functions within the territorial limits of his primary jurisdiction . . .

\* \* \*

(3) Where the officer . . . has probable cause to believe that the other officer is in need of aid or assistance.

(4) Where the officer has obtained the prior consent of the chief law enforcement officer . . . of the organized law enforcement agency which provides primary police services to a political subdivision which is beyond that officer's primary jurisdiction to enter the other jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction.

(5) Where the officer is on official business and views an offense, or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property.

42 Pa.C.S.A. § 8953(a)(3)-(5).

It is well-settled that:

[T]he MPJA must be liberally construed to effectuate the purposes of the Act, which include providing police with the authority to act in a law enforcement capacity outside their own jurisdictions under limited circumstances. The intent behind the MPJA is to promote public safety while maintaining police accountability; the Act was not intended to be used to erect impenetrable jurisdictional walls benefiting only criminals hidden in their shadows.

Two conflicting positions have arisen in this Court on the question as to whether a violation of the MPJA entitles an aggrieved party to suppression under the exclusionary rule. In **Commonwealth v. Bradley**, 724 A.2d 351 (Pa.Super.1999) *(en banc),* this Court noted the exclusionary rule applies to any evidence gathered subsequent to an MPJA violation even if the officer acts in good faith or the police officer's actions would have been lawful if performed within the proper jurisdictional limits.

In **Commonwealth v. Chernosky**, 874 A.2d 123 (Pa.Super.2005) *(en banc), appeal denied*[,] 588 Pa. 747, 902 A.2d 1238 (2006), this Court implicitly rejected the absolutist approach espoused in **Bradley** in favor of the case-by-case approach approved of by our Supreme Court in **Commonwealth v. O'Shea**, 523 Pa. 384, 567 A.2d 1023 (1990). The factors to be considered in applying this case-by-case approach consist of all the circumstances of the case including the intrusiveness of the police conduct, the extent of deviation from the letter and spirit of the [MPJA], and the prejudice to the accused. [**See**] **Chernosky, supra** at 130. The **Chernosky** Court further noted that the spirit, or purpose of, the MPJA is to proscribe investigatory, extraterritorial forays used to acquire additional evidence where probable cause does not yet exist.

> ***Chernosky*** unquestionably sets forth the proper standard this Court is to employ in determining whether the exclusionary rule should act to suppress evidence obtained pursuant to an MPJA violation. ***Chernosky*** relies on an approach approved by our Supreme Court, is more recent than the decision rendered in ***Bradley***, and sets forth a standard which allows this Commonwealth's courts to tailor a remedy in situations where police intentionally have overstepped their boundaries while still affording our courts the flexibility to deny suppression when police have acted to uphold the rule of law in good faith but are in technical violation of the MPJA.

***Commonwealth v. Henry***, 943 A.2d 967, 971-72 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008) (quotation marks and most citations omitted); ***see also Commonwealth v. O'Shea***, 567 A.2d 1023, 1030 (Pa. 1989), *cert. denied*, 498 U.S. 881 (1990) ("suppression of evidence may or may not be the appropriate remedy for a violation of [MPJA]"); ***Commonwealth v. Borovichka***, 18 A.3d 1242, 1250 (Pa. Super. 2011) (suppression for violation of MPJA not warranted where it would "run afoul of the legislative intent behind the MPJA, which is to promote public safety, not to hinder law enforcement and shield criminal behavior.") (citations omitted).

In ***Henry***, the arresting municipal police officer entered into the jurisdiction of the Pennsylvania State Police after determining he had probable cause to stop the defendant. ***See id.*** at 972. The Court acknowledged that the officer failed to follow proper protocol pursuant to the MPJA, but observed that the failure did not prejudice the defendant and that "the arresting officer did not enter the State Police's jurisdiction to conduct

an extraterritorial patrol or to embark on a fishing expedition in hopes of gathering more evidence to reach a determination of probable cause." *Id.* at 973 (citation omitted). Based on the foregoing, the Court concluded that the circumstances did not warrant the exclusionary rule's application. *See id.*

In this case, the trial court applied the *Henry* Court's reasoning in reaching its decision, in which it found:

> In the present case, Officer Cole had probable cause to detain [Appellant] based on the incident in Lancaster City, which is Officer Cole's jurisdiction. Officer Cole specifically asked the Manheim Township Police to detain [Appellant] on his behalf until he could arrive. Officer Swigart did so. Officer Swigart had also been informed of the nature of the incident in the city and that city police believed the weapon used by [Appellant] was in a black bag in [Appellant's] vehicle. Pursuant to the automobile exception recently adopted by the Pennsylvania Supreme Court, Officer Swigart could have searched the vehicle, found the black bag, and the contents of the bag. Instead, he secured the vehicle until Officer Cole entered Manheim Township's jurisdiction for the purpose of conducting official duties which arise from official matters within his primary jurisdiction. The technical violation of the MPJA did not prejudice [Appellant] because the contents of the black bag would have been inevitably discovered whether searched by the Lancaster City Police or the Manheim Township Police. Additionally, like the officer in *Henry*, Officer Cole was not on a fishing expedition to hopefully reach a determination of probable cause. Officer Cole possessed probable cause based on his investigation in Lancaster City to believe [Appellant], who had fled just prior to police arrival, was in possession of the firearm used in the assault and that the firearm was in a black bag in [his] car. Therefore, despite being outside of his jurisdiction, Officer Cole's search of the black bag was appropriate.

(Trial Ct. Op., at 8-9). We agree.

After our independent review of the record, and plenary review of the trial court's legal conclusions, we conclude that it properly found that, although Officer Cole may have technically violated the MPJA by performing the search outside his jurisdiction, this did not necessitate the imposition of the exclusionary rule.  **See Jones**, **supra** at *1; **Henry**, **supra** at 971-73. Therefore, Appellant's second issue lacks merit.

The trial court properly denied Appellant's motion to suppress.  **See Jones**, **supra** at *1.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/22/2015</u>