2015 PA Super 160

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| PATRICK SCOTT JONES | |
| Appellant | No. 1286 WDA 2014 |

Appeal from the Judgment of Sentence August 1, 2014
in the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0001833-2013

BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

OPINION BY JENKINS, J.:                                    **FILED JULY 24, 2015**

Appellant Patrick Scott Jones appeals from the judgment of sentence entered in the Butler County Court of Common Pleas following his bench trial conviction for driving under the influence of alcohol or controlled substances (Schedule I metabolite - marijuana) ("DUI"),[1] for which the trial court imposed a sentence of sixty (60) months' intermediate punishment, with the first 105 days to be served on house arrest with electronic monitoring, and a $1,500.00 fine.[2]  We affirm.

_____

[1] 75 Pa.C.S. § 3802(d)(1)(iii).

[2] The trial court also convicted Appellant of the summary offenses of operation following suspension of registration, 75 Pa.C.S. § 1371, and surrender of registration plates and cards upon suspension, 75 Pa.C.S. § 1376, but imposed no further penalty for these convictions.

On the morning of April 28, 2013, an Adams Township Police Department officer stopped Appellant's vehicle due to a suspended registration. Upon approaching Appellant, the officer immediately noticed a strong odor of burnt marijuana emanating from Appellant's vehicle, in which Appellant was the sole occupant. After speaking with Appellant regarding the suspended registration, the officer ordered Appellant from the vehicle and placed him in handcuffs. Subsequently, the officer asked Appellant to submit to chemical blood testing, and Appellant agreed. The chemical blood test indicated that Appellant had 7.7 nanograms per milliliter of Delta-9-THC in his blood and 100 nanograms per milliliter of Delta-9-Carboxy THC in his blood.[3]

Appellant filed a suppression motion on December 19, 2013. At the beginning of the suppression hearing, the Commonwealth conceded to the suppression of several items of evidence seized after Appellant was placed in handcuffs. *See* N.T. 4/3/2014, p. 3. However, the trial court continued the hearing to determine whether the officer had the right to detain Appellant and test his blood based on the smell of marijuana emanating from the vehicle. *See id.* at 3-6. On May 13, 2014, the trial court granted the suppression motion in part and denied it in part. The court granted

_____

[3] THC stands for tetrahydrocannabinol and is the active ingredient of marijuana. THC is referred to in blood chemical reports as Delta-9-THC. The chemical names for THCC, the metabolite of marijuana, are 11-Hydroxy-Delta-9-THC and Delta-9-Carboxy THC.

suppression of all "evidence seized subsequent to [Appellant] being placed in handcuffs, with the exception of the blood test results." Trial Court Order, May 13, 2014, p. 2.

The trial court conducted a bench trial on August 1, 2014, during which the Commonwealth introduced the results of Appellant's blood test into evidence. The trial court convicted and sentenced Appellant as discussed, *supra*. Appellant timely appealed.[4]

Appellant raises the following two claims for review:

> I. Whether a mere odor of marijuana emanating from the inside of a motor vehicle supports a finding of probable cause to arrest for driving under the influence[?]
>
> II. Whether the blood alcohol results should be suppressed as fruit of the poisonous tree as a result of an illegal arrest[?]

Appellant's Brief, p. 2 (all capitals removed).

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court

_____

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa.2010) (internal citations and quotation marks omitted).

Appellant argues that the trial court erred by not suppressing the results of chemical blood testing to which he consented during the course of his arrest. *See* Appellant's Brief, pp. 9-17. Specifically, Appellant claims that, because police cannot request chemical testing pursuant to 75 Pa.C.S. § 1547 for an alcohol-based DUI based solely on the smell of alcohol, the police should not have been allowed to request that he submit to chemical blood testing based solely on the smell of marijuana in his vehicle. He argues that corroborating evidence must exist in addition to the odor of marijuana to allow authorities to request that a driver submit to a section 1547 blood test for controlled substances. *See id.* at 15. He requests that, for the purposes of a probable cause analysis, this Court regard the odor of marijuana the same as the odor of alcohol and rule that the smell of marijuana in isolation does not provide the requisite "reasonable grounds" to allow police to request a motorist submit to chemical testing pursuant to section 1547. *See id.* at 12-14. Otherwise stated, he argues that

- 4 -

uncorroborated police testimony regarding the odor of marijuana is an insufficient foundation to request section 1547 testing. We do not agree.

The Vehicle Code provides, in relevant part:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment.--**

. . .

**(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance. . . ;

. . .

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S. § 3802. The Controlled Substance, Drug, Device and Cosmetic Act classifies marijuana as a Schedule I controlled substance. 35 Pa.C.S. § 780-104(1)(iv). Additionally,

**(a) General rule.--**Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock)[.]

75 Pa.C.S. § 1547. "[T]o administer a blood test under § 1547(a)(1), a police officer need only have reasonable grounds to believe that a person was driving under the influence of alcohol [or controlled substances]. 'Reasonable grounds' has been interpreted to mean 'probable cause;' thus, the police officer must have 'knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed.'" *Commonwealth v. Aiello*, 675 A.2d 1278, 1280 (Pa.Super.1996) (internal citations omitted).[5]

_____

[5] Regarding probable cause, we note:

"[P]robable cause does not involve certainties, but rather 'the factual and practical considerations of everyday life on which reasonable and prudent men act.'" *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa.Super.2005) (quoting *Commonwealth v. Romero*, [] 673 A.2d 374, 376 (1996)). "It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause." *Commonwealth v. Monaghan*, [] 441 A.2d 1318 (1982) (citation omitted). *See also Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that probable cause means "a fair probability that contraband or evidence of a crime will be found."); *Commonwealth v. Lindblom*, 854 A.2d 604, 607 (Pa.Super.2004) (reciting that probable cause exists when criminality is one reasonable inference, not necessarily even the most likely inference). To this point on the *quanta* of evidence necessary to establish probable cause, the United States Supreme Court recently noted that "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the []probable-cause[] decision." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (citations omitted).

*Commonwealth v. Dommel*, 885 A.2d 998, 1002 (Pa.Super.2005).

Here, at the suppression hearing, Adams Township police officer Ed Lentz gave uncontroverted testimony that, upon approaching Appellant's car, he immediately smelled a very strong odor of burnt marijuana emanating from the car. *See* N.T. April 3, 2014, pp. 13-14, 17. Officer Lentz had absolutely no question that what he smelled was indeed burnt marijuana.[6] *Id.* at 14. He further explained that Appellant was the sole occupant of the vehicle. *Id.* at 21.

Initially, Appellant cites numerous cases[7] to support his argument that the smell of burnt marijuana alone is insufficient to support a police officer's request that a motorist submit to blood testing pursuant to section 1547.

_____

[6] The officer had previously testified as to his training and experience identifying the odor of burnt marijuana, which he described as "very distinct." N.T. 4/3/2-14, pp. 7-8.

[7] *Commonwealth v. Griffith*, 32 A.3d 1231 (Pa.2011); *Commonwealth v. Graham*, 81 A.3d 137 (Pa.Super.2013) *appeal denied*, 93 A.3d 462 (Pa.2014); *Commonwealth v. Angel*, 946 A.2d 115 (Pa.Super.2008); *Commonwealth v. Hilliar*, 943 A.2d 984 (Pa.Super.2008); *Commonwealth v. Leighty*, 693 A.2d 1324 (Pa.Super.1997); *Commonwealth v. Feathers*, 660 A.2d 90 (Pa.Super.1995) *aff'd*, 683 A.2d 289 (Pa.1996); *Commonwealth v. Yedinak*, 676 A.2d 1217 (Pa.Super.1996); *Commonwealth v. Rishel*, 658 A.2d 352 (Pa.Super.1995) *appeal granted*, *judgment vacated*, 682 A.2d 1267 (Pa.1996); *Commonwealth v. Hipp*, 551 A.2d 1086 (Pa.Super.1988); *Commonwealth v. Monaghan*, 441 A.2d 1318 (Pa.Super.1982); *Commonwealth v. Labiaux*, 434 A.2d 194 (Pa.Super.1981); *Commonwealth v. Guiliano*, 418 A.2d 476 (Pa.Super.1980); *Commonwealth v. Funk*, 385 A.2d 995 (Pa.Super.1978); *Commonwealth v. Reynolds*, 389 A.2d 1113 (Pa.Super.1978).

*See* Appellant's Brief, pp. 12-14. Appellant correctly suggests that his cited cases stand for the proposition that the smell of alcohol alone is not sufficient to justify a request for a section 1547 blood test for suspected alcohol-based DUIs, and that such a request requires some further indicia of intoxication, such as erratic driving, slurred speech, bloodshot eyes, balance issues, etc. However, Appellant's cited cases are distinguishable because they involve suspected alcohol-based DUIs, not marijuana-based DUIs. Because there are no on-point Pennsylvania cases, Appellant analogizes the smell of marijuana to the smell of alcohol and suggests that, as with suspected cases of alcohol-based DUI, the police must have corroborating evidence to request blood tests. *Id.*

However, the Vehicle Code treats consumption of alcohol differently from consumption of marijuana. The Vehicle Code does not preclude an adult from consuming **any** amount of alcohol and then operating a motor vehicle in Pennsylvania. **See** 75 Pa.C.S. § 3802(a). Instead, the Vehicle Code precludes the operation of a motor vehicle only "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). On the other hand, the Vehicle Code precludes an individual from operating a motor vehicle with **any** amount of scheduled controlled substance, or a metabolite thereof, in the driver's blood. 75 Pa.C.S. § 3802(d). Because marijuana is a Schedule I controlled substance, the Vehicle Code prohibits an individual from operating

a vehicle after consuming *any* amount of marijuana. As a result, unlike cases where police suspect alcohol-based DUI, evidence of operator consumption of any marijuana is enough to allow police to request a section 1547 blood test for suspected controlled substance-based DUI.[8] Such evidence includes the distinct odor of burnt marijuana emanating from a vehicle in which the operator is the sole occupant.[9]

Therefore, in the instant case, under the proper standard of review, the evidence presented that the police officer smelled a strong, distinct odor of burnt marijuana emanating from a vehicle in which Appellant was the only occupant suffices to have allowed the police to request a blood test pursuant to section 1547. Accordingly, the trial court properly ruled that "the officer was justified in reasonably believing that [Appellant] had been operating his

_____

[8] We note that **Yedinak**, **supra**, concerned a DUI arrest based solely on marijuana use and discussed multiple impairment indicia (trouble walking/balancing and unsafe driving) in addition to an odor of marijuana in discussing the propriety of blood testing. However, **Yedniak** is inapposite to the instant matter because in that case the police observed the numerous impairment indicia prior to conducting the traffic stop.

[9] We note that **Graham** and **Griffith**, **supra**, involved prescription medication controlled substance DUIs or combined prescription medication and alcohol-based DUIs, and both involved an examination of multiple indicia of impairment, as with alcohol-based DUI arrests. We note, however, that prescription medications lack the distinctive odor of burnt marijuana. Therefore, in such cases, police have no choice but to investigate and observe, as in alcohol-based cases, a combination of indicia of impaired driving prior to requesting blood samples or making an arrest, regardless of the fact the Vehicle Code prohibits the operation of motor vehicles with any such controlled substance or metabolite thereof in the driver's bloodstream.

vehicle after smoking marijuana which then [gave the officer] the authority to ask [Appellant] to submit to having a sample of his blood taken." May 13, 2014 Order, p. 2. The trial court did not err in denying suppression of the blood test results.[10]

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2015

_____

[10] Because Appellant's arrest was legal as discussed *supra*, his claim that the blood test results were "fruit of the poisonous tree" fails. *See* *Commonwealth. v. Shaffer*, 710 A.2d 89, 92 (Pa.Super.1998) ("The remedy for an *illegal* arrest in Pennsylvania is suppression of the fruits of the illegal arrest. ") (emphasis provided).