J.S07035/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEPHEN VINCENT BIDGOOD | |
| Appellant | No. 649 MDA 2015 |

Appeal from the Judgment of Sentence March 24, 2015
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0000285-2014

BEFORE:  BOWES, OTT, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED FEBRUARY 11, 2016**

Appellant, Stephen Vincent Bidgood, appeals from the March 24, 2015 judgment of sentence of forty-eight hours to six months' imprisonment entered in Luzerne County following his bench conviction for driving under the influence-high rate of alcohol ("DUI").[1]  Appellant contests the trial court's denial of his motion to suppress evidence.  We affirm.

On August 6, 2013, Corporal Anthony Doblovasky, of the Pennsylvania State Police, was filling his vehicle with gas, when he heard "loud screaming and yelling."  N.T., 2/5/15, at 3-5.  Corporal Doblovasky turned around and observed a male occupant of a Jeep Wrangler with his hand out of the window, moving it up and down.  *Id.* at 5.  He further observed the vehicle

---

* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(b).

did not have doors. *Id.* Corporal Doblovasky proceeded to get in his patrol vehicle and pull over the jeep, driven by Appellant. *Id.* at 9. After approaching the jeep, Corporal Doblovasky observed Appellant, a male passenger in the front seat, and a female passenger in the back seat. *Id.* at 10. Corporal Doblovasky then inquired if the passengers needed assistance and asked for Appellant's license and registration. *Id.* He detected an odor of alcohol emanating from the vehicle, observed Appellant had glassy eyes, and noticed Appellant's speech was slurred, slow, and lethargic. *Id.* Following these observations, Corporal Doblovasky performed two field sobriety tests and determined Appellant was too impaired to operate a vehicle safely. *Id.* at 11-13.

On April 1, 2014, by criminal information, the Commonwealth charged Appellant with DUI-high rate of alcohol, DUI-general impairment,[2] and operating his vehicle in an unsafe condition.[3] Appellant filed a motion to suppress evidence, based on a lack of reasonable suspicion or probable cause to stop his vehicle, on August 4, 2014.[4] On February 5, 2015, the trial court held a hearing on Appellant's motion to suppress. Corporal

_____

*Former Justice specially assigned to the Superior Court.

[2] 75 Pa.C.S. § 3802(a)(1).

[3] 75 Pa.C.S. § 4107(b)(2).

[4] Appellant filed an identical motion to suppress evidence on September 4, 2014.

Doblovasky testified as follows, relevant to his decision to stop Appellant after he initially observed the vehicle.

[The Commonwealth]:

Q. [W]hat did this behavior coupled with the observation of no doors on the Jeep lead you to believe?

[Corporal Doblovasky]:

A. I thought he may be in need of some assistance, definitely trying to get my attention. That was my first thought, that he wanted me. I wanted to make sure he was okay. And also, he was in violation of the vehicle code as well without the doors on the Wrangler.

*   *   *

Q. In relation to the behavior that you saw that night, what did you think about the behavior?

A. It's not normal, that he's obviously trying to get my attention. Being that I had a marked car, marked uniform and, you know, observed him yelling in my direction, that, you know, someone wants you if that happens.

Q. Have you ever been in a situation where you witnessed this type of behavior before?

A. Yes, I have.

Q. And on those occasions, what did you do?

A. People were in need of help. There was a domestic in the car, things of that nature. But, yes, I've been flagged down like that before.

Q. Once you left the gas station, what did you do?

A. There was a lady at the gas station -- as I was observing the car as it continued down the road – she was telling me that they were trying to get your attention –

\* \* \*

A. [A]s I continued to watch the vehicle with screaming and yelling and actually carry on pass my location, the lady was sort of stunned. And she said, I think he was yelling at you or towards you. And I said, I think so. And at that point, I quickly tried to put the gas cap on and get the gas out, pull out in … traffic, pull out into traffic. I did also notice that when I was – had that conversation with her, it appeared he sped his vehicle up a little quicker.

N.T., 2/5/15, at 6-8. On cross-examination, Corporal Doblovasky unambiguously articulated his reasons for initiating the traffic stop: "I pulled him over for two reasons. I said he was in distress and also because there was no doors on the vehicle and that the vehicle needed doors[.]" ***Id.*** at 26.

At the conclusion of the hearing, the trial court made the following findings of fact.

[The trial] court: Findings of fact, on August 6th, 2013, at approximately 9:50 p.m., the officer was engaged . . . fueling his vehicle, the vehicle driven by [Appellant] passed the location. And the driver or other passenger of the vehicle appeared to call out to the officer a distress signal which the officer interpreted and other bystanders interpreted as a distress signal. The officer also advised that the vehicle was being operated without doors.

The officer proceeded to follow [Appellant] and stop [Appellant] to inquire about what appeared to him to be a distress call and also what appeared in his observation to be a violation of the vehicle, operation of a vehicle in an unsafe manner because the vehicle did not have doors.

-4-

*Id.* at 49-50; *see also* Trial Ct. Op., 6/10/15, at 3-4.

Appellant immediately proceeded to a stipulated non-jury trial, and the trial court found Appellant guilty of DUI-high rate of alcohol and acquitted Appellant of the remaining two charges. On March 24, 2015, the trial court sentenced Appellant to a term of imprisonment of forty-eight hours to six months, plus a $500 fine. Thereafter, on April 13, 2015, Appellant filed a timely notice of appeal. Appellant filed a court-ordered statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and the trial court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant raises the following issue for our consideration.

> Whether the trial court erred by denying [Appellant]'s [m]otion to [s]uppress where [Appellant] was illegally stopped by [o]fficers who lacked probable cause for the pulling over [of] his vehicle and all evidence resulting from said illegal seizure, including all physical evidence, were fruit of the poisonous tree?

Appellant's Brief at 2.

Appellant argues that he was subject to an illegal seizure, and therefore, the trial court erred in denying his suppression motion. *Id.* at 6. Specifically, Appellant avers that Corporal Doblovasky conducted an investigatory detention without the requisite reasonable suspicion. *Id.* at 7. He posits that because Corporal Doblovasky did not witness Appellant commit a traffic violation or "immediately ask [Appellant] if anything was

wrong[,]" there was not reasonable suspicion for the stop.[5]  *Id.*  For the reasons that follow, we disagree.

When considering the trial court's denial of a motion to suppress, this Court employs the following standard of review.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.  Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted).

It is well-established that "[t]he Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect

---

[5] While Appellant suggests in his "statement of question involved" that Corporal Doblovasky lacked probable cause to effectuate the seizure, his argument solely focuses on a lack of reasonable suspicion without any discussion of the probable cause standard.  *See* Appellant's Brief at 2, 6-8.

individuals from unreasonable searches and seizures." ***Commonwealth v. Walls***, 53 A.3d 889, 892 (Pa. Super. 2012). In analyzing the constitutionality of police-citizen interactions, we look to the nature of the exchange between an officer and a citizen, which are categorized as follows.

> Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicions, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitution the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Gutierrez***, 36 A.3d 1104, 1107 (Pa. Super. 2012) (citation omitted).

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Clemens*, 66 A.3d 373, 379 (Pa. Super. 2013) (citation omitted). Moreover, the level of suspicion required specifically for vehicle stops is as follows.

> Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responisbilty, vehicle identification number or engine number or the driver's license, or to secure other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

*Commonwealth v. Ibrahim*, ___ A.3d ___, ___ 2015 WL 6777602, at *3 (Pa. Super. 2015) (citing 75 Pa.C.S. § 6308(b)). Further, "[t]raffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." *Id.*

Instantly, the record supports the trial court's findings of fact. *Compare* N.T., 2/5/15 at 6-8, *with* N.T., 2/5/15 at 49-50; Trial Ct. Op., 6/10/15, at 3-4; *see also Gutierrez*, 36 A.3d at 1107. Furthermore, the record amply demonstrates that Corporal Doblovsky had sufficient reasonable suspicion to effectuate an investigative detention, as he articulated an investigatory purpose for the stop. *See Clemens*, 66 A.3d at 379; *Ibrahim*, ___ A.3d at ___, 2015 WL6777602, at *3. Specifically, Corporal Clemens related that when he heard yelling and screaming coming from Appellant's vehicle, he believed, in light of his experience as a police

officer, the occupants may be in need of assistance. N.T., 2/5/2015 at 5-7. This belief was further bolstered by an eyewitness' interpretation of the yelling, *i.e.*, that the occupants of the vehicle were seeking police assistance. *Id.* at 7-8. Moreover, Corporal Doblovasky testified he believed Appellant was in violation of the Motor Vehicle Code, and such testimony was credited by the trial court. *See* Trial Ct. Op., 2/5/15, at 4 ("This [c]ourt found the testimony of Pennsylvania State Police Corporal Anthony Doblovasky to be credible."); *accord* 75 Pa.C.S.§ 6308(b) (stating a police officer may stop a vehicle upon "reasonable suspicion that a violation of this title is occurring or has occurred[.]").

Based on the foregoing discussion, we conclude the trial court properly denied Appellant's motion to suppress evidence. *See Jones*, 121 A.3d at 526-27. Therefore, we affirm Appellant's judgment of sentence.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2016