J-S24018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LUIS RAMOS NUNEZ-CALDERON, | |
| Appellant | No. 893 MDA 2015 |

Appeal from the Judgment of Sentence April 30, 2015
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001440-2014

BEFORE: GANTMAN, P.J., BOWES, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.: **FILED MARCH 04, 2016**

Luis Ramos Nunez-Calderon appeals from the judgment of sentence of life imprisonment that the trial court imposed after a jury convicted him of first-degree murder and two counts of aggravated assault. We affirm.

Appellant's convictions arise from the April 29, 2014 death of Wendy Contreras-Hernandez. We briefly recite the pertinent facts. From approximately May 2013 until March 2014, Ms. Contreras-Hernandez and Appellant were involved in a romantic relationship while living in New York City. In March 2014, Appellant and the victim moved to a rented residence at 518 West Centre Street, Shenandoah, Pennsylvania, and ceased their romantic involvement at some point prior to the murder.

On the morning of her death, Ms. Contreras-Hernandez took her daughter Xina to school. Shortly before noon, Nicole Brobst, a neighbor who was familiar with Appellant and the victim, saw them together on the porch of 518 West Centre Street. Ms. Brobst said that Appellant had Ms. Contreras-Hernandez pinned on the ground and then dragged her into the residence. Walter Sadusky, who lived at 516 West Centre Street, heard the victim screaming and saw a man place his hands around her throat and then drag her into 518 West Centre Street. Shenandoah Borough Police were dispatched to 518 West Centre Street for a domestic dispute. They left after they were unable to contact anyone at that location.

The victim's neighbor and the manager of her residence, Lydia Contreras, was contacted by the school when Xina was not retrieved at the end of the day. Ms. Contreras picked up Xina, went to 518 West Centre Street, and entered it with a key. Ms. Contreras discovered Ms. Contreras-Hernandez's body lying in a pool of blood in the bathroom. Her throat had been slit with a knife, and she had defensive wounds on her hands.

In the meantime, Appellant had fled to New York City. Police ascertained Appellant's whereabouts using his cellular telephone. He was arrested and transported to the New York Central Court Building in Manhattan at approximately 6:00 p.m. on April 30, 2014. State Troopers Melissa Kyper and Eric Schaeffer arrived to retrieve Appellant at 11:00 p.m. Upon their arrival at the police station, those troopers secured the services

of Adelis Acosta, who worked for the Manhattan Criminal Court in Central Booking, Manhattan. Ms. Acosta was employed as a Spanish/English interviewer for purposes of determining whether a detainee could be released on his own recognizance in lieu of posting bail. In that capacity, she interviewed arrestees who spoke Spanish and helped them complete an intake form. Ms. Acosta spoke both Spanish and English fluently, was not acquainted with Appellant, and did not know why he was being held.

Since Appellant did not understand English, Ms. Acosta disseminated the *Miranda* warnings to him in Spanish, and Appellant executed a written waiver of his rights.[1] He thereafter confessed to the murder, telling police the following. On the day in question, Appellant and Ms. Contreras-Hernandez were no longer living together but he came from New York City to visit her. The victim told Appellant that she had a protection from abuse order against him. Appellant became convinced that Ms. Contreras-Hernandez was trying to steer him toward the front windows so that he could be viewed by neighbors and arrested for violating the order.

Ms. Contreras-Hernandez and Appellant began to argue, and she fled to the porch and started screaming. Appellant hit, bit, and then choked Ms.

---

[1] In his brief, Appellant represents that Ms. Acosta testified at trial that Appellant was told by the troopers that "the information he gave would be private or confidential[.]" Appellant's brief at 5. However, Ms. Acosta stated at trial, "I don't remember if the term private or confidential was used at the time" that Appellant was interviewed. N.T. Trial (Vol.1), 4/27-30/15, at 336.

Contreras-Hernandez so that she would stop yelling. After the victim became unconscious, Appellant dragged her inside the residence and carried her into the bathroom. Ms. Contreras-Hernandez regained consciousness and attempted to speak and stand up.

Appellant told police that "he already knew that he was in trouble and Wendy was half dead already. So he went down to the kitchen and got a knife. He retrieved the knife, came back up the steps back into the bathroom, and he sliced her throat." N.T. Trial (Vol.1), 4/27-30/15, at 350-51. Appellant blamed the victim for the entire incident, telling police that he would not have had to kill her if she had not run outside and screamed. Appellant also told police that the knife that he used as the murder weapon could be found in the victim's closet on the top shelf. State police recovered that item in the described location, and Appellant's DNA was discovered on the blade.

In this appeal, Appellant raises a challenge to the trial court's denial of his pre-trial motion to suppress his confession: "Did the court err in failing to suppress the defendant's oral statement given to the Pennsylvania State Police while he was in custody in New York City?" Appellant's brief at 4.

This Court's standard of review of a denial of a motion to suppress evidence is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are

supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (2015) (citation omitted).

Whether a confession is voluntary is a question of law subject to plenary review. *Commonwealth v. Mitchell*, 902 A.2d 430 (Pa. 2006). In evaluating whether a confession is voluntary, we examine the totality of the circumstances. *Id*.

The determination of whether a defendant has validly waived his *Miranda* rights depends upon a two-prong analysis: (1) whether the waiver was voluntary, in the sense that defendant's choice was not the end result of governmental pressure, and (2) whether the waiver was knowing and intelligent, in the sense that it was made with full comprehension of both the nature of the right being abandoned and the consequence of that choice.

*Id*. at 451.

Appellant first asserts that his confession was involuntary because he did not understand English. Appellant's brief at 7. However, Ms. Acosta, who spoke fluent Spanish and English, gave Appellant his *Miranda* warnings in Spanish. Appellant never complained that he did not understand Ms.

Acosta, who translated the interview questions and answers. Ms. Acosta testified at the suppression hearing that Appellant told her that he was "fine" with her interpretation during the interview and that they were both from the Dominican Republic. N.T. Suppression Hearing, 3/6/15, at 24. Thus, this challenge to the knowing and voluntary nature of his confession fails.

Appellant next makes a series of factual assertions. Appellant notes that he "was not asked to review, at any point, anything he allegedly said. None of the interview was visually or audio recorded. Sections of what was allegedly asked and the responses of the Defendant in the summary were left blank."[2] Appellant's brief at 7. Appellant provides no case authority to support a proposition that a defendant must review his confession. The law does not require that a confession be recorded. ***Commonwealth v. Craft***, 669 A.2d 394 (Pa. 1995). The fact that a police officer did not take detailed notes of a question does not render the answer thereto involuntary.

A confession is voluntary when a defendant knowingly waived his constitutional rights and if he was not pressured into make the confession.

---

[2] This final statement pertains to the fact that the contents of Appellant's confession were outlined in notes by Trooper Kyper. Contrary to Appellant's position on appeal, Trooper Kyper never said that there were blank spaces in her notes about what Appellant told her. Rather, that witness testified that she did not transcribe in detail her questions. She explained that she did not need to write down the entire content of what she asked because she knew where she was going at each point in the interview based upon Appellant's answers and could remember the questions. N.T. Trial (Vol. I), 4/27-30/15, at 431-434.

Appellant was given his **Miranda** warnings in Spanish, and he executed a written waiver of those rights. The suppression court also made the following findings, which were supported by the record. The two state troopers were calm during the interview and never raised their voices. Neither Trooper Kyper nor Trooper Schaeffer threatened Appellant or promised him anything. Appellant remained calm and answered questions coherently until he began to detail slicing the victim's throat, when he started to cry. Hence, there is no basis upon which to overturn the suppression court's determination that Appellant's confession was voluntarily and knowingly given.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/4/2016