J-A19032-24

2024 PA Super 245

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN SANCHEZ | : | |
| | : | |
| Appellant | : | No. 1680 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 13, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000974-2022

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:         **FILED: OCTOBER 25, 2024**

Brian Sanchez appeals[1] from the November 13, 2023 aggregate judgment of sentence of 6 months' probation, with 10 days' house arrest plus fines and costs, imposed after he was found guilty in a bench trial of two counts of driving under the influence of alcohol or controlled substance ("DUI").[2] After careful review, we affirm.

The trial court summarized the relevant factual findings of this case as follows:

> Trooper Jeffrey Allen (hereinafter "Trooper Allen") is employed with the Pennsylvania State Police and has

---

[*] Former Justice specially assigned to the Superior Court.

[1] This case is related to Appellant's appeal at No. CP-01-0000143-2023 (1694 MDA 2023), wherein he raises similar issues.

[2] 75 Pa.C.S.A. § 3802(d)(1)(i) and (iii), respectively.

been a Pennsylvania State Police Trooper for approximately 3 years.

Trooper Allen graduated from the Pennsylvania State Police Academy and received training concerning the Pennsylvania Vehicle Code. Trooper Allen is certified in Standardized Field Sobriety Tests (SFST) and Advanced Roadside Impaired Driving Enforcement (ARIDE).

Trooper Allen has conducted approximately 25 to 50 Vehicle Code investigations for vehicles which had a loud or modified exhaust system.

On May 6, 2022, at approximately 1:25 a.m., Trooper Allen and Trooper Dunkin were on routine patrol in Oxford Township, Adams County, Pennsylvania. While traveling north on Route 94, Trooper Allen observed a yellow Acura with a loud exhaust and further observed the vehicle to have what appeared to be a modified exhaust system, which enhanced the noise emanating from the exhaust. Based on Trooper Allen's training and experience, he felt the exhaust system violated the Pennsylvania Vehicle Code. Trooper Allen stopped the yellow Acura on Hanover Road in Oxford Township.

[Appellant] was identified as the operator of the Acura. Trooper Allen advised [Appellant] "the reason, um, I'm stopping you, okay, okay, did you put exhaust on here" and [Appellant] responded "yeah."

Trooper Allen observed that [Appellant's] eyes were bloodshot and glassy and smelled a slight odor of marijuana emanating from the vehicle. [Appellant] was the sole occupant of the vehicle. As a result of Trooper Allen's immediate observations, Trooper Allen initiated a DUI investigation.

While [Appellant] was seated in his vehicle, Trooper Allen asked, "all right, how much, how much marijuana is in the car?", and [Appellant] responded "uh, none." Trooper Allen asked, "did you just smoke...", and [Appellant] responded "no, I just woke

- 2 -

up earlier." Trooper Allen asked, "have you smoked in the car before?", and [Appellant] responded "no." Trooper Allen subsequently asked "okay, when's the last time you have, outside of the car?", and [Appellant] responded, "uh, probably like, earlier". Trooper Allen asked, "what time was that at?", and [Appellant] responded "uh, like 9". Trooper Allen asked, "9 p.m.?" and [Appellant] responded "Yeah, I have a card, a pencil." Trooper Allen responded "okay, the reason I'm asking is I can smell a slight, a slight odor. Are you smoking bud?". [Appellant] responded "no, bud no", Trooper Allen said "dab pen?" and [Appellant] responded "yeah".

[Appellant] subsequently consented to a search and provided Trooper Allen with the dab pen, which contained suspected THC wax.

Trooper Allen requested [Appellant] exit the vehicle and administered SFST tests (HGN, walk and turn test and one leg stand test) and ARIDE tests (modified Romburg test and lack of convergence test). [Appellant] showed multiple signs of impairment during the tests. Trooper Allen placed [Appellant] under arrest for suspected DUI.

During Trooper Allen's investigation, [Appellant] advised he did not have a valid medical marijuana card.

Trial court opinion, 4/12/23 at 1-3 (numeration omitted).

On October 25, 2022, Appellant filed an **omnibus** pretrial suppression motion challenging, **inter alia**, the legality of the traffic stop and the constitutionality of Sections 3802(d)(1)(i) and (iii) of the DUI statute. The suppression court conducted hearings on Appellant's motion on January 23 and February 21, 2023. Following the hearings, the suppression court denied Appellant's motion on April 12, 2023. Thereafter, Appellant proceeded to a

stipulated bench trial on July 10, 2023 and was found guilty of the aforementioned offenses. As noted, trial court sentenced Appellant to an aggregate term of 6 months' probation, with 10 days' house arrest plus fines and costs, on November 13, 2023. This timely appeal followed on December 8, 2023.[3]

Appellant raises the following issues for our review:

> 1. Whether the [trial] court committed an error of law and/or abused its discretion when it denied Appellant's motion to suppress where the Trooper did not have sufficient facts under the totality of circumstances to provide a reasonable suspicion to detain Appellant for a DUI/drug investigation?
>
> 2. Whether the [trial] court committed an error of law and/or abused its discretion when it determined that Appellant did not have standing to challenge Sections 3 802(d)(1)(i) and (iii) of the DUI statute as being unconstitutional on their face in violation of the equal protection and due process guarantees/rights of the Pennsylvania Constitution?
>
> 3. Whether the [trial] court committed an error of law and/or abused its discretion when it denied Appellant's motion to find that Sections 3802(d)(1)(i) and (iii) of the DUI statute are unconstitutional on their face in violation of the equal protection guarantees/rights of the Pennsylvania Constitution, where there was no evidence of impairment to drive, since those Sections:
>
>> a) Violate equal protection rights by creating a classification based upon whether a

---

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

person is either 1) using a Schedule II/III lawful/approved controlled substance (must be proven to have been under the influence of a drug which impaired their ability to safely drive the vehicle to be convicted), or 2) using approved/lawful medical marijuana (guilty of a DUI if any amount of marijuana or any metabolite, active or inactive, is in their blood based upon that fact alone even if not impaired at all), without a sufficient constitutional basis to justify that disparate treatment under strict scrutiny review where fundamental Pennsylvania Constitutional rights (including security/protection of one's reputation) are infringed upon and adversely affected by a felony/misdemeanor DUI conviction[?]

4. Whether the [trial] court committed an error of law and/or abused its discretion when it denied Appellant's motion to find that Sections 3802(d)(1)(i) and (iii) of the DUI statute are also independently unconstitutional on their face in violation of the due process guarantees/rights of the Pennsylvania Constitution, where there was no evidence of impairment to drive, since those Sections:

a) Violate substantive due process rights and overbreadth protections because their criminalization of the presence of any amount of marijuana or its metabolites (active or inactive) in an individual's blood, without requiring proof of any impairment to drive safely, is arbitrary and capricious, uses unnecessarily broad means which punish lawful behavior and a mere status, results in unjust disparate treatment of patients approved to use medical marijuana to treat their medical conditions (as proof of impairment is required for patients using other approved/lawful medications) as well as

> others who are not impaired to drive safely, bears no relation to keeping unsafe drivers off the roads, and requires strict scrutiny review since fundamental Pennsylvania Constitutional rights (including security/protection of one's reputation) are infringed upon and adversely affected by a felony/misdemeanor DUI conviction[?]

Appellant's brief at 5 (extraneous capitalization omitted).

For the ease of our discussion, we have elected to address Appellant's claims in a different order than presented in his appellate brief. To the extent that Appellant's claims are interrelated, we will address those issues concurrently.

## I. Standing to Challenge DUI Statute on Constitutional Grounds

We begin by addressing Appellant's claim that the trial court erred in concluding that he did not have standing to challenge Sections 3802(d)(1)(i) and (iii) of the DUI statute on constitutional grounds. Appellant's brief at 41-43. Appellant avers that these sections violate his equal protection and substantiative due process rights under the United States and Pennsylvania Constitutions and are unconstitutional on their face given the passage of the Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. § 10231.101, *et seq*. Appellant's brief at 44-62. We disagree.

> Standing is a justiciability concern, implicating a court's ability to adjudicate a matter. Accordingly, a court must resolve justiciability concerns as a threshold matter before addressing the merits of the

case. These justiciability doctrines ensure that courts do not issue inappropriate advisory opinions.

The doctrine of standing stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract. The touchstone of standing is protect[ing] against improper plaintiffs. To do so, courts require a plaintiff to demonstrate he or she has been aggrieved by the conduct he or she challenges. **To determine whether the plaintiff has been aggrieved, Pennsylvania courts traditionally examine whether the plaintiff's interest in the outcome of the lawsuit is substantial, direct, and immediate.** A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative.

*Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021) (citations and internal quotation marks omitted; emphasis added).

Our review of the record in this matter establishes that Appellant cannot demonstrate that he is an "aggrieved party" under Section 3802(d)(1), as his interest in the outcome of his constitutional challenge is neither direct or immediate. Appellant's argument stems from the DUI statute's alleged infringement on the rights of medical marijuana users provided for by the MMA, which went into effect May 17, 2016. However, at the time of the instant traffic stop, May 6, 2022, Appellant did not possess a medical marijuana card permitting him to use marijuana under the MMA. The record further reflects that Appellant did not consume medical marijuana prior to this traffic stop.

Accordingly, we discern no error on the part trial court in concluding that Appellant lacked standing to challenge Sections 3802(d)(1)(i) and (iii) of the DUI statute on constitutional grounds. *See* trial court opinion, 4/12/23 at 14-15.

In light of our determination that the trial court did not error in concluding that Appellant lacked standing to challenge Sections 3802(d)(1)(i) and (iii), we need not address the merit of Appellant's underlying constitutional claims. In any event, even if Appellant did possess standing, his claims would nonetheless fail. This Court has long recognized that "[t]he constitutional validity of duly enacted legislation is presumed[,]" and "[a] statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution[.]" *Commonwealth v. Crawford*, 24 A.3d 396, 400 (Pa.Super. 2011) (citations omitted).

A panel of this Court recently addressed these identical issues in *Commonwealth v. Smith*, 320 A.3d 674 (Pa.Super. 2024), which was decided on July 23, 2024. Therein, the *Smith* Court held that the DUI statutory scheme at Sections 3802(d)(1)(i) and (iii) did not violate the Equal Protection Clause, *id.* at 686-688; Section 3802(d)(1) of the DUI statute did not violate the substantive due process rights of MMA patients, *id.* at 688-690; and Section 3802(d)(1), both on its face and independently as applied to Appellant, did not violate procedural due process guarantees and rights. *Id.* at 690-691.

Moreover, it defies logic to suggest that the fact that medical marijuana is now legal for qualified individuals in this Commonwealth somehow renders our DUI statute, which makes it unlawful to drive or operate a vehicle with a Schedule 1 Controlled Substance like marijuana in the blood, suddenly unconstitutional.

## II. Denial of Suppression Motion

Appellant next argues that the suppression court erred in denying his suppression motion because Trooper Allen did not possess reasonable suspicion to detain him for a DUI investigation following the otherwise lawful stop of his vehicle for a violation of the Motor Vehicle Code ("MVC").[4] Appellant's brief at 15-40.

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled.

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those]

---

[4] The record reflects that Appellant does not challenge the validity of Trooper Allen's initial traffic stop of his vehicle for a suspected violation of 75 Pa.C.S.A. § 4523, **Exhaust systems, mufflers and noise control**, of the MVC.

findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." *Commonwealth v. Bostick*, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), *appeal denied*, 987 A.2d 158 (Pa. 2009). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Reppert*, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted).

This court has recognized three types of interactions between members of the public and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518 (Pa.Super. 2020) (citation omitted). Thus, pursuant to the Fourth Amendment, a person may not be lawfully seized, either by means of an investigative detention or a custodial detention, unless the police possess the requisite level of suspicion.

Here, the crux of Appellant's claim is that Trooper Allen "did not have sufficient facts under the totality of circumstances to provide a reasonable suspicion to detain him for a [DUI] investigation" and that Trooper Allen's continued interaction with Appellant transitioned the traffic stop into an unlawful investigative detention. Appellant's brief at 15-21.

It is well settled in this Commonwealth that,

> [a] police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004).

In *Rodriguez v. United States*, 575 U.S. 348 (2015), the United States Supreme Court examined the permissible scope of an officer's investigation during a traffic stop. The *Rodriguez* Court reasoned:

- 11 -

> A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called **Terry** [**v. Ohio**, 392 U.S. 1 (1968)] stop ... than to a formal arrest. Like a **Terry** stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission — to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed.

**Rodriguez**, 575 U.S. at 354 (citations and internal quotation marks omitted).

The **Rodriguez** Court recognized that police officers may conduct certain unrelated checks during an otherwise lawful traffic stop, provided they "not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." **Id.** at 372.

Likewise, in **Rogers**, our Supreme Court held that a trooper had reasonable suspicion to continue to detain a defendant beyond the initial traffic stop, where the defendant, **inter alia**, was extremely nervous and shaking; gave vague answers to the trooper's questions; and his vehicle contained supplies which the trooper knew from experience were used in the packaging and distribution of narcotics. **Rogers**, 849 A.2d at 1189–1190. The **Rogers** Court acknowledged that although there could be innocent explanations for these circumstances, "reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate

- 12 -

further[, but rather] requires a suspicion of criminal conduct that is reasonable based upon the facts of the matter." *Id.* at 1190 (emphasis omitted).

Similarly, our review of the totality of the circumstances in the instant matter supports the conclusion that Trooper Allen possessed reasonable suspicion to extend the traffic stop to investigate whether Appellant was engaged in criminal activity, namely suspected DUI.

The record reflects that in the early morning hours of May 6, 2022, Tropper Allen was on routine patrol in Adams Country, Pennsylvania when he stopped Appellant's vehicle for a suspected violation of Sections 4523(a), (b) and (d) of the MVC, due to its loud and modified exhaust system. Notes of testimony, 2/21/23 at 8-10; *see also* 75 Pa.C.S.A. § 4523. During the course of Trooper Allen's investigation of the traffic violation that warranted the initial stop, he smelled marijuana emanating from Appellant's vehicle and observed that Appellant's eyes were bloodshot and glassy. Notes of testimony, 2/21/23 at 11. Trooper Allen further testified that Appellant acknowledged using marijuana at 9 p.m. earlier that evening and presented him with a "dab pen" that contained suspected THC wax. *Id.* at 12. Thereafter, Trooper Allen asked Appellant to exit his vehicle so that he could conduct field sobriety tests. *Id.* at 12-13.

Trooper Allen further testified that he has been employed by the Pennsylvania State Police for approximately three years, has had training on how to conduct DUI investigations, and is certified in Standardized Field

- 13 -

Sobriety Tests (SFST) and Advance Roadside Impaired Driving Enforcement (ARIDE). *Id.* at 8. Trooper Allen noted that Appellant's performance on the SFST and ARIDE tests indicated multiple signs of impairment. *Id.* at 13-14. Additionally, MVR footage from Trooper Allen's patrol vehicle was submitted into evidence to corroborate his testimony. *Id.* at 15.

It is well settled in this Commonwealth that that Trooper Allen was warranted to use information gathered during his initial traffic stop to justify a second investigatory detention. *See Rogers*, 849 A.2d at 1190. We find that Trooper Allen's initial interaction with Appellant seamlessly transitioned into a second, investigative detention whereby Trooper Allen sought to ask additional questions of Appellant on account of his reasonable suspicion Appellant was driving under the influence of marijuana.

Based on the foregoing facts of record, we discern no error on the part of the suppression court in denying Appellant's suppression motion. Accordingly, we affirm the November 13, 2023 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024