J-A09032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 :
   v. :
 :
 :
 :
CORY MICHA STRICKHOUSER :
 :
   Appellant : No. 632 MDA 2022

Appeal from the Judgment of Sentence Entered April 21, 2022,
in the Court of Common Pleas of Adams County,
Criminal Division at No(s):  CP-01-CR-0000631-2021.

BEFORE:  PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:    **FILED: MAY 8, 2023**

Cory Strickhouser appeals from the judgment of sentence entered following his convictions for two counts of driving under the influence (DUI).[1] He challenges the denial of his suppression motion.  We affirm.

Strickhouser was charged with DUI following a traffic stop on March 14, 2021.  On August 9, 2021, Strickhouser moved to suppress the evidence obtained during the stop.  The suppression court heard the matter on September 21, 2021.  The parties prepared briefs.  The court found the following facts:

 1. Trooper Nathan McHugh is employed with the Pennsylvania State Police and had been a Pennsylvania State Police Trooper for approximately 5 months when the vehicle stop occurred in this case.

---

[1] 75 Pa.C.S.A. § 3802(a)(1) and (c).

2. Trooper McHugh graduated from the Pennsylvania State Police Academy and received training concerning the Pennsylvania Vehicle Code, including investigations involving loud mufflers and modified exhaust systems.

3. On March 14, 2021 at approximately 12:30 a.m., Trooper McHugh was travelling northbound in a marked Pennsylvania State Police SUV patrol unit on Hanover Pike, Conewago Township, Adams County, Pennsylvania. Trooper McHugh observed a blue Ford Focus pass him travelling south on Hanover Pike.

4. When the Ford Focus passed Trooper McHugh's vehicle, Trooper McHugh observed the Ford Focus to have an exhaust/ muffler that was "quite loud." Trooper McHugh turned his vehicle around and followed [the Ford Focus]. **Trooper McHugh verified that the Ford Focus had a very loud exhaust system.** The Ford Focus made a loud audible sound as if the motor were amplified through the exhaust.

5. Trooper McHugh initiated a vehicle stop on the Ford Focus to investigate the amplified loud sound from the exhaust system. [Strickhouser] was identified as the operator of the Ford Focus.

6. Trooper McHugh advised [Strickhouser] why he stopped him, and [Strickhouser] stated that the vehicle's exhaust system was modified.

7. Trooper McHugh observed that [Strickhouser's] eyes were bloodshot and glassy, [Strickhouser's] pupils were dilated, and there was a strong odor of alcoholic beverage on [Strickhouser's] breath. As a result of Trooper McHugh's observations, Trooper McHugh's investigation changed, and he initiated a DUI investigation.

8. Ultimately, Trooper McHugh placed [Strickhouser] under arrest for suspected driving under the influence of alcohol.

Opinion, 10/19/21, at 1–2 (emphasis added). Based on these findings, the court denied Strickhouser's motion to suppress. The case proceeded to a non-jury trial on March 10, 2022, where the court found Strickhouser guilty.

Strickhouser was sentenced on April 21, 2022, to 84 months of probation with restrictive conditions of 18 months of house arrest. He timely appealed. Strickhouser and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Strickhouser presents three issues for our review:

1. Did the lower court err in finding that the trooper verified that the Ford Focus had a "very loud" exhaust system to the extent that the court maintained that the trooper's observation about amplification is a verification of an exhaust loud enough to be materially relevant or sufficient to establish cause for the stop, where such finding was clearly erroneous and not supported by the reviewable evidence?

2. Did the lower court err in denying Strickhouser's motion to suppress where, based on the evidence, there was not reasonable suspicion for the traffic stop where the trooper pulled Strickhouser over due to a loud exhaust/muffler, described as not "normal" and "amplified," which is not a violation, but at a time when the trooper believed it was, without any reasonable or articulable basis to suspect that such condition violated a traffic or other law or to justify an investigative detention?

3. Did the lower court err in denying Strickhouser's motion to suppress where, based on the evidence, there was not probable cause for the traffic stop where the trooper pulled Strickhouser over due to a loud exhaust/muffler, described as not "normal" and "amplified," which is not a violation, but at a time when the trooper believed it was, without any sufficient cause to believe that such condition violated a traffic or other law?

Strickhouser's Brief at 4–5.

Strickhouser's issues all challenge the denial of his motion to suppress. We employ the following standard of review:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by

- 3 -

the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (quoting

*Commonwealth v. Jones*, 121 A.3d 524, 526–27 (Pa. Super. 2015))

(brackets and ellipsis omitted). The factual findings of a suppression court do

not bind this Court unless the record supports those findings.

*Commonwealth v. Coughlin*, 199 A.3d 401, 405 (Pa. Super. 2018) (citing

*Commonwealth v. Champney*, 161 A.3d 265, 271 (Pa. Super. 2017)). That

is, "appellate courts are not bound by findings wholly lacking in evidence."

*Commonwealth v. Hamlin*, 469 A.2d 137, 139 (Pa. 1983) (citing

*Commonwealth v. Hall*, 380 A.2d 1238 (Pa. 1977)).

We first address Strickhouser's argument that the record does not

support the suppression court's finding that "Trooper McHugh verified that the

Ford Focus had a very loud exhaust system." Opinion, 10/19/21, at 2

(emphasized in facts above). The evidence in support was as follows:

> [By the Commonwealth:] . . . And when you noticed that vehicle, what did you do?

[Trooper McHugh:] I proceeded to turn my vehicle around and proceeded to follow the vehicle.

Q       And how long did you follow the vehicle for, approximately?

A       Approximately -- I would say approximately 200 yards.

Q       Okay.  And did you then initiate a vehicle stop?

A       Yes, I did.

Q       When you initiated the vehicle stop, what was the reason?

A       The reason was for the loud exhaust on the vehicle.

N.T., 9/21/21, at 6–7.  On cross-examination, Trooper McHugh stated that Strickhouser's exhaust was "quite loud."  *Id.* at 11.  He also described the sound as "amplified" by the exhaust system.  *Id.* at 25.

The suppression court's finding is supported by the record.  Trooper McHugh described the exhaust system as "quite loud," which the court took to mean "very loud."  This is practically a synonym and at most an inference supported by the testimony.  Because the above finding is not "clearly erroneous" or "wholly lacking in evidence," it binds this Court. **Hamlin**, **supra**; **Coughlin**, **supra**.  Strickhouser's first issue fails.

We thus turn to Strickhouser's issues of law.  By statute, police may stop vehicles based on reasonable suspicion of Vehicle Code violations, which our courts have limited to those violations that can be investigated further after the stop.  75 Pa.C.S.A. § 6308(b); **Commonwealth v. Chase**, 960 A.2d 108, 115–16 (Pa. 2008).  Violations that require no further investigation require probable cause.  **Commonwealth v. Tillery**, 249 A.3d 278, 282–83 (Pa. Super. 2021) (citing **Commonwealth v. Brown**, 64 A.3d 1101, 1105

(Pa. 2013)). Reasonable suspicion is a lesser quantum than probable cause. "[T]o establish reasonable suspicion, an officer must be able to point to *specific and articulable facts* which led him to reasonably suspect a violation." ***Commonwealth v. Holmes***, 14 A.3d 89, 96 (Pa. 2011). Probable cause turns on "whether the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Ibrahim***, 127 A.3d 819, 824 (Pa. Super. 2015) (quoting ***Commonwealth v. Rodriguez***, 585 A.2d 988, 990 (Pa. 1991)).

Section 4523 of the Vehicle Code, "Exhaust systems, mufflers and noise control," provides in part:

> **(a) Compliance with established sound levels.--**Every motor vehicle operated on a highway shall be constructed, equipped, maintained and operated so as not to exceed the sound level for the vehicle as prescribed in regulations promulgated by the department. The test procedures and instrumentation to be utilized shall also be established by regulation.
>
> **(b) Compliance with exhaust requirements.--**In addition to any requirements established under sections 4531 (relating to emission control systems) and 4532 (relating to smoke control for diesel-powered motor vehicles), every motor vehicle shall be constructed, equipped, maintained and operated so as to prevent engine exhaust gases from penetrating and collecting in any part of the vehicle occupied by the driver or passengers.
>
> **(c) Mufflers and related equipment.--**Every motor vehicle shall be equipped with a muffler or other effective noise suppressing system in good working order and in constant operation and no muffler or exhaust system shall be equipped with a cutout, bypass or similar device.

**(d) Unauthorized modification of equipment.--**No person shall modify the exhaust system of a motor vehicle in a manner which will amplify or increase the noise emitted by the motor of the vehicle above the maximum levels permitted under subsection (a) or violate the provisions of subsection (b). Headers and side exhausts are permitted provided the vehicle meets all the requirements of this section.

75 Pa.C.S.A. § 4523(a)–(d).

The related regulations are found at 67 Pa. Code § 157.1 *et seq.* Notably, the maximum permissible sound levels depend on the vehicle's type, speed, and location. 67 Pa. Code § 157.11(a). And although the regulations authorize any police officer "to inspect, examine and test a motor vehicle," an officer needs specialized training to use the sound meters that are required to determine a vehicle's sound level. 67 Pa. Code §§ 157.21(a), (c), 157.31.

This Court addressed Section 4523 and the corresponding regulations in ***Commonwealth v. Bailey***, 947 A.2d 808 (Pa. Super. 2008). As here, ***Bailey*** involved a traffic stop for a car with a loud exhaust system that led to an arrest for DUI. There, we recognized that while officers need special training and sound meters to prove sound violations beyond a reasonable doubt, they do not need this training and equipment to initiate a traffic stop. ***Id.*** at 814. Instead, officers may develop reasonable suspicion of sound violations based on their experience and observations. ***Id.*** This reasonable suspicion justifies a traffic stop for Section 4523. ***Id.*** at 812, 814 (citing 75 Pa.C.S.A. § 6308(b)); ***accord Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015) (citing ***Bailey***). We thus held that observations that a car's exhaust system was "extremely" or "unusually loud" and louder than other

cars of the same make provided reasonable suspicion to stop for two Section 4523 violations. **Bailey**, 947 A.2d at 814–15 (citing 75 Pa.C.S.A. § 4523(a) (exceeding established sound levels) and (c) (muffler not in good working order)).

Strickhouser invites us to recast **Bailey**. He urges that the **real** factual basis to stop Bailey's car was that the muffler was missing, not just loud. **See id.** at 817–18 (Tamilia, J., dissenting) (reviewing the evidence to reason that "the suspected noise violation [was] an *ad hoc* rationalization contrived to justify an otherwise unwarranted traffic stop"). Furthermore, Strickhouser challenges the holding that reasonable suspicion is a constitutionally sufficient basis to stop to investigate a suspected offense for which the officer does not have the training[2] or equipment **required** to issue a citation. **See Commonwealth v. Chase**, 960 A.2d 108, 116 (Pa. 2008) (allowing traffic stops based on reasonable suspicion only for "investigatable" offenses).

We decline to diverge from **Bailey**. Importantly, this panel cannot overrule another panel of the Superior Court. **Commonwealth v. Beck**, 78 A.3d 656, 659 (Pa. Super. 2013) (citing **Commonwealth v. Taylor**, 649 A.2d 453, 455 (Pa. Super. 1994)). We are therefore bound by our holdings that reasonable suspicion will support a traffic stop for a suspected violation of

---

[2] Trooper McHugh testified that he was trained to use a sound meter to measure the sound level from an exhaust system. N.T., 9/21/21, at 11. However, he did not know at the suppression hearing what the applicable sound limit was, nor did he state that he had a sound meter. **Id.**

Section 4523, and that observations that exhaust is "extremely" or "unusually loud" provide such reasonable suspicion.[3]

Our inquiry, then, is whether Trooper McHugh possessed reasonable suspicion to stop Strickhouser for violating Section 4523. Strickhouser is correct in asserting that not all amplification violates the Vehicle Code. However, this illustrates why the traffic stop required reasonable suspicion— further investigation would be needed to determine whether **this** amplification exceeded the prescribed sound limits or otherwise made the exhaust system not be in good working order. **Bailey**, 947 A.2d at 814–15. Here, Trooper McHugh was trained about loud mufflers and modified exhaust systems. He heard that Strickhouser's exhaust system was "quite loud," like the motor was amplified through the exhaust. We conclude that these specific, articulable facts led Trooper McHugh to reasonably suspect that Strickhouser was violating Section 4523. This authorized Trooper McHugh to stop Strickhouser and investigate further. Because Trooper McHugh had reasonable suspicion to stop Strickhouser, Strickhouser's second issue fails. Based on our

---

[3] **Bailey** was decided several months before **Chase**. Although **Chase** clarified that some traffic stops require probable cause, we do not read it as an intervening decision that allows us to revisit **Bailey**. We observe that the regulations that require specialized training to use sound meters nonetheless authorize "[a]ny police officer" to inspect and examine vehicles, which does not require sound meters. 67 Pa. Code § 157.21(a). Therefore, an untrained officer could still obtain useful information in an investigative detention. **Cf. Chase**, 960 A.2d 108, 121 (Pa. 2008) (Saylor, J., concurring) (recognizing that a driver might provide an inculpatory statement). Here, Trooper McHugh could reasonably expect to elicit that the muffler was not in good working order, which would not require further testing. 75 Pa.C.S.A. § 4523(c).

resolution of this issue, and our precedent in **Bailey**, we need not decide whether Trooper McHugh had probable cause to stop Strickhouser. Consequently, his third issue also fails.  Therefore, the suppression court properly denied Strickhouser's motion to suppress.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2023