J-A19033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRIAN SANCHEZ | : | |
| | : | |
| Appellant | : | No. 1694 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 13, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000143-2023

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: OCTOBER 29, 2024**

Brian Sanchez appeals[1] from the November 13, 2023 aggregate judgment of sentence of 60 months' probation, with 90 days' house arrest plus fines and costs, imposed after he was found guilty in a bench trial of two counts of driving under the influence of alcohol or controlled substance ("DUI") and one count of unlawful activities.[2]  After careful review, we affirm.

The trial court summarized the relevant factual findings of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] This case is related to Appellant's appeal at No. CP-01-0000974-2022 (1680 MDA 2023), wherein he raises similar issues.

[2] 75 Pa.C.S.A. §§ 3802(d)(1)(i), 3802(d)(1)(iii), and 4107(b)(2), respectively.

Trooper [Bradley] Fornwalt[3] is employed with the Pennsylvania State Police and has been a Trooper for approximately five years.

Trooper Fornwalt graduated from the Pennsylvania State Police Academy and received training concerning the Pennsylvania Motor Vehicle Code. Trooper Fornwalt is certified in Standardized Field Sobriety Testing (SFST) and Advanced Roadside Impaired Driving Enforcement (ARIDE).

Trooper Fornwalt has received specialized training in window tint violations and is experienced in the use of a window tint meter.

Trooper Fornwalt has conducted or been involved in approximately 200 DUI investigations with approximately 75% involving suspected drug DUI investigations.

On September 3, 2022, at approximately 15:57 hours, Trooper Fornwalt was stationary at the intersection of East Berlin Road and Carlisle Pike (Pennsylvania Route 94) in Reading Township, Adams County, Pennsylvania. Trooper Fornwalt was in full uniform in a marked Pennsylvania State Police vehicle.

Trooper Fornwalt observed a yellow Acura coupe traveling south on Route 94 with very dark window tint on the vehicle's passenger side windows.

Trooper Fornwalt travelled south on Route 94 and activated his emergency lights and siren and stopped the yellow Acura coupe at approximately 15:57:58 hours in Reading Township.

[Appellant] was the operator of the yellow Acura coupe. No other individuals were present in the vehicle.

---

[3] We note that Trooper Fornwalt's last name is misspelled "Cornwall" in the May 18, 2023 hearing transcript.

Upon contact with [Appellant], Trooper Fornwalt smelled burnt marijuana coming from the vehicle along with a strong odor of cologne. Trooper Fornwalt also observed that [Appellant's] eyes were bloodshot, glassy and watery.

Trooper Fornwalt advised [Appellant] he stopped the vehicle because of the dark tint on the windows. Trooper Fornwalt utilized a window tint meter on the front passenger window and received a tint reading of 2%. Trooper Fornwalt testified this reading meant only 2% of light was able to pass through the window, which was in violation of the Pennsylvania Motor Vehicle Code.

Trooper Fornwalt testified that based on his training and experience, cologne is utilized as a masking agent to cover the odor of marijuana.

[Appellant] advised Trooper Fornwalt that he had a medical marijuana card but had not used medical marijuana for approximately two weeks. [Appellant] denied the recent use of marijuana, and also denied anyone else using marijuana in his vehicle. [Appellant] stated there was no medical marijuana in the vehicle.

Based on Trooper Fornwalt's observation while [Appellant] was still in his vehicle, he requested [Appellant] exit the vehicle to perform field sobriety testing for purposes of a drug DUI investigation.

Trooper Fornwalt's observations of [Appellant's] vehicle and interaction with [Appellant] were captured on an MVR video, which was admitted into evidence by the Commonwealth. The MVR video corroborated Trooper Fornwalt's testimony concerning his observations of [Appellant's] vehicle and interaction with [Appellant].

The Court finds Trooper Fornwalt's testimony credible.

Trial court opinion, 6/14/23 at 1-3 (numeration omitted).

On April 19, 2023, Appellant filed an **omnibus** pretrial suppression motion challenging, **inter alia**, the legality of the traffic stop and the constitutionality of Sections 3802(d)(1)(i) and (iii) of the DUI statute. The suppression court conducted a hearing on Appellant's motion on May 18, 2023. Following the hearing, the suppression court denied Appellant's motion on June 14, 2023. Thereafter, Appellant proceeded to a stipulated bench trial on September 7, 2023 and was found guilty of the aforementioned offenses. As noted, trial court sentenced Appellant to an aggregate term of 60 months' probation, with 90 days' house arrest plus fines and costs, on November 13, 2023. This timely appeal followed on December 11, 2023.[4]

Appellant raises the following issues for our review:

1. Whether the [trial] court committed an error of law and/or abused its discretion when it denied Appellant's motion to suppress where the Trooper did not have sufficient facts under the totality of circumstances to provide a reasonable suspicion to detain Appellant for a DUI investigation?

2. Whether the [trial] court committed an error of law and/or abused its discretion when it denied Appellant's motion to find that Sections 3802(d)(1)(i) and (iii) of the DUI statute are unconstitutional in violation of the equal protection guarantees/rights provided to Appellant and other medical marijuana patients under the Pennsylvania Constitution, where there was no evidence of impairment to drive, since those Sections:

---

[4] Appellant and the trial court have complied with Pa.R.A.P. 1925.

a) Violate equal protection rights by creating a classification based upon whether a person is either 1) using a Schedule II/III lawful/approved controlled substance (must be proven to have been under the influence of a drug which impaired their ability to safely drive the vehicle to be convicted), or 2) using lawful/approved medical marijuana (guilty of a DUI if any amount of marijuana or any metabolite, active or inactive, is in their blood based upon that fact alone even if not impaired at all), without a sufficient constitutional basis to justify that disparate treatment under strict scrutiny review where fundamental Pennsylvania Constitutional rights (including security/protection of one's reputation) are infringed upon and adversely affected by a felony/misdemeanor DUI conviction[?]

3. Whether the [trial] court committed an error of law and/or abused its discretion when it denied Appellant's motion to find that Sections 3802(d)(1)(i) and (iii) of the DUI statute are also independently unconstitutional in violation of the due process guarantees/rights of the Pennsylvania Constitution provided to Appellant, other medical marijuana patients, and any individual who has used marijuana as a Schedule I drug (even if such person was not an approved medical marijuana user), where there was no evidence of impairment to drive, since those Sections:

a) Violate substantive due process rights and overbreadth protections because their criminalization of the presence of any amount of marijuana or its metabolites (active or inactive) in an individual's blood, without requiring proof of any impairment to drive safely, is arbitrary and capricious, uses unnecessarily broad means which punish lawful behavior and

a mere status, results in unjust disparate treatment of patients approved to use medical marijuana to treat their medical conditions (as proof of impairment is required for patients using other approved/lawful medications) as well as others who are not impaired to drive safely, bears no relation to keeping unsafe drivers off the roads, and requires strict scrutiny review since fundamental Pennsylvania Constitutional rights (including security/protection of one's reputation) are infringed upon and adversely affected by a felony/misdemeanor DUI conviction[?]

Appellant's brief at 5 (extraneous capitalization omitted).

## I. Denial of Suppression Motion

Appellant first argues that the suppression court erred in denying his suppression motion because Trooper Fornwalt did not possess reasonable suspicion to detain him for a DUI investigation following the otherwise lawful stop of his vehicle for a violation of the Motor Vehicle Code ("MVC").[5] *Id.* at 15-35.

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled.

[Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the

_____

[5] The record reflects that Appellant does not challenge the validity of Trooper Fornwalt's initial traffic stop of his vehicle for a suspected violation of 75 Pa.C.S.A. § 4107(b)(2) of the MVC, for extremely dark window tint.

legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), ***appeal denied***, 135 A.3d 584 (Pa. 2016).

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), ***appeal denied***, 987 A.2d 158 (Pa. 2009). "To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." ***Commonwealth v. Reppert***, 814 A.2d 1196, 1201 (Pa.Super. 2002) (citation omitted).

This court has recognized three types of interactions between members of the public and the police:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable

- 7 -

suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Way*, 238 A.3d 515, 518 (Pa.Super. 2020) (citation omitted). Thus, pursuant to the Fourth Amendment, a person may not be lawfully seized, either by means of an investigative detention or a custodial detention, unless the police possess the requisite level of suspicion.

Here, the crux of Appellant's claim is that Trooper Fornwalt "did not have sufficient facts under the totality of circumstances to provide a reasonable suspicion to detain him for a DUI investigation" and that Trooper Fornwalt's continued interaction with Appellant transitioned the traffic stop into an unlawful investigative detention. Appellant's brief at 15-35.

It is well settled in this Commonwealth that,

> [a] police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004).

- 8 -

In ***Rodriguez v. United States***, 575 U.S. 348 (2015), the United States Supreme Court examined the permissible scope of an officer's investigation during a traffic stop. The ***Rodriguez*** Court reasoned:

> A seizure for a traffic violation justifies a police investigation of that violation. A relatively brief encounter, a routine traffic stop is more analogous to a so-called ***Terry*** [***v. Ohio***, 392 U.S. 1 (1968)] stop ... than to a formal arrest. Like a ***Terry*** stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission — to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose. Authority for the seizure thus ends when tasks tied to the traffic infraction are — or reasonably should have been — completed.

***Rodriguez***, 575 U.S. at 354 (citations and internal quotation marks omitted).

The ***Rodriguez*** Court recognized that police officers may conduct certain unrelated checks during an otherwise lawful traffic stop, provided they "not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." ***Id.*** at 372.

Likewise, in ***Rogers***, our Supreme Court held that a trooper had reasonable suspicion to continue to detain a defendant beyond the initial traffic stop, where the defendant, ***inter alia***, was extremely nervous and shaking; gave vague answers to the trooper's questions; and his vehicle contained supplies which the trooper knew from experience were used in the packaging and distribution of narcotics. ***Rogers***, 849 A.2d at 1189–1190. The ***Rogers*** Court acknowledged that although there could be innocent explanations for

these circumstances, "reasonable suspicion does not require that the activity in question must be unquestionably criminal before an officer may investigate further[, but rather] requires a suspicion of criminal conduct that is reasonable based upon the facts of the matter." *Id.* at 1190 (emphasis omitted).

Similarly, our review of the totality of the circumstances in the instant matter supports the conclusion that Trooper Fornwalt possessed reasonable suspicion to extend the traffic stop to investigate whether Appellant was engaged in criminal activity, namely suspected DUI.

The record reflects that on the afternoon of September 3, 2022, Trooper Fornwalt was on patrol in Adams Country, Pennsylvania when he stopped Appellant's vehicle for a suspected violation of Section 4107(b)(2) of the MVC, due to its extremely dark window tint. Notes of testimony, 5/18/23 at 15-16; *see also* 75 Pa.C.S.A. § 4107(b)(2). During the course of Trooper Fornwalt's investigation of the traffic violation that warranted the initial stop, he smelled burnt marijuana and a strong odor of cologne emanating from Appellant's vehicle. Notes of testimony, 5/18/23 at 17. Trooper Fornwalt testified that based on his training and experience, cologne is utilized as masking agent to cover the odor of marijuana. *Id.* Trooper Fornwalt also observed that Appellant's eyes were bloodshot and glassy. *Id.* Trooper Fornwalt testified that Appellant acknowledged that he possessed a medical marijuana card but denied using medical marijuana for the past two weeks. *Id.* at 18. Thereafter,

Trooper Fornwalt asked Appellant to exit his vehicle so that he could conduct field sobriety tests. *Id.*

Trooper Fornwalt testified that he has been employed with Pennsylvania State Police for approximately five years; has had training on how to conduct DUI investigations; has been involved in 200 investigations involving suspected DUI, three-quarters of which involved controlled substances; and is certified in Standardized Field Sobriety Tests (SFST) and Advance Roadside Impaired Driving Enforcement (ARIDE). *Id.* at 14-15, 36. Additionally, the suppression court found that the MVR footage from Trooper Fornwalt's patrol vehicle that was submitted into evidence corroborates his credible testimony. *Id.* at 37; *see also* suppression court opinion, 6/14/23 at 3, §§ 14-15.

It is well settled in this Commonwealth that that Trooper Fornwalt was warranted to use information gathered during his initial traffic stop to justify a second investigatory detention. *See Rogers*, 849 A.2d at 1190. We find that Trooper Fornwalt's initial interaction with Appellant seamlessly transitioned into a second, investigative detention whereby Trooper Fornwalt sought to ask additional questions of Appellant on account of his reasonable suspicion Appellant was driving under the influence of a controlled substance, namely marijuana.

Based on the foregoing facts of record, we discern no error on the part of the suppression court in denying Appellant's suppression motion.

## II. Constitutional Challenges to the DUI Statute

Appellant next argues that the trial court erred in declining to find that Sections 3802(d)(1)(i) and (iii) of the DUI statute violate his equal protection and substantiative due process rights under the United States and Pennsylvania Constitutions and are unconstitutional on their face given the passage of the Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. § 10231.101, *et seq*. Appellant's brief at 36-61.

> The constitutionality of a statute is a question of law; therefore, the scope of appellate review is plenary. The constitutional validity of duly enacted legislation is presumed. The party seeking to overcome the presumption of validity must meet a formidable burden. A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality.

*Commonwealth v. Crawford*, 24 A.3d 396, 400 (Pa.Super. 2011) (citations and internal quotation marks omitted).

A panel of this Court recently addressed these identical issues in *Commonwealth v. Smith*, 320 A.3d 674 (Pa.Super. 2024), which was decided on July 23, 2024. Therein, the *Smith* Court held that the DUI statutory scheme at Sections 3802(d)(1)(i) and (iii) did not violate the Equal Protection Clause, *id.* at 686-688; Section 3802(d)(1) of the DUI statute did not violate the substantive due process rights of MMA patients, *id.* at 688-690; and Section 3802(d)(1), both on its face and independently as applied to Appellant, did not violate procedural due process guarantees and rights. *Id.* at 690-691.

We find that the **Smith** decision is dispositive of the issues at hand, and based on the forgoing precedent, Appellant's constitutional claims warrant no relief. Accordingly, we affirm the November 13, 2023 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/29/2024</u>